IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-20889
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROGER MICHAEL REISSIG; JAY ALAN
BRAMLETT; LAVONNE O. LAMBERT
BAKER; KIMBERLY LYNN HOLICK;
HARVEY SCOTT BAKER,

Defendants-Appellants.
_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before POLITZ, JOLLY, and DUHÉ, Circuit Judges.

PER CURIAM:

This case involves a telemarketing operation outside Houston, Texas, called American Land Liquidators ("ALL"). Two of the defendants, Harvey S. Baker and Jay A. Bramlett, organized the operation as an advertising service for landowners interested in selling their land. The defendants also include Roger Reissig and Kimberly Holick, who were managers of the telemarketers, and Lavonne Baker, who was the office manager. The defendants were convicted of using ALL to carry out a fraudulent telemarketing scheme.

The defendants raise numerous objections to their conviction on appeal. Because the defendants have raised three issues of some merit, we write briefly to address them. Those issues are (1)

whether there was sufficient evidence to support the defendants' conviction, (2) whether the district court erred in delivering a deliberate ignorance instruction (the issue for which publication of this opinion is merited), and (3) whether the district court erred when it enhanced Bramlett's sentence, finding that he was an organizer of the scheme. Ultimately, however, we find no error on the part of the district court and affirm the convictions and sentences of each of the defendants.

We now turn to addressing each of the three issues.

I

The defendants argue that they were conducting a legitimate business and that there is insufficient evidence of wrongdoing to support the convictions against them. They argue that their service was just like a dating service. For a fee, they would enter into their computer system information about a particular plot of land that was for sale. They would then advertise to buyers that they could provide, free of charge, listings of plots of land that were for sale in specific areas. When a buyer contacted them, they would record the buyer's preferences, match the buyer's preferences to plots of land on their system and then send the relevant "matches" to the buyer. The buyer would then contact the sellers with whom he wished to deal.

Because the defendants were not involved in the actual negotiations between buyer and seller, the record is not particularly clear with respect to how many actual purchases

2

resulted from matches being sent to buyers. It is clear, however, that some matches were sent out to prospective buyers and that, in some instances, buyers did purchase land listed in the defendants' database.

The government argued at trial, however, that the defendants' telemarketing business amounted to a sham designed to get money from sellers without providing any real advertising service. To get sellers to purchase the advertising, the defendants sent postcards to them claiming that they had a designated department that was specifically designed to advertise for the particular area where the seller owned land. It is clear that, in fact, they did not. Once a seller called in, the seller would be subjected to a high-pressure sales pitch by a telemarketer hired and managed by the defendants. The government produced multiple examples of misleading or factually incorrect statements made by the telemarketers during these sales pitches. Furthermore, the government introduced testimony that supports the conclusion that the defendants were not only aware of the conduct of the telemarketers but devoted their energies to generating income through the telemarketers' pitches. For instance, the government introduced evidence that Scott Baker told a dubious employee "not to worry about [advertising], they just needed to be able to tell their clients they advertised." The government further demonstrated that a disproportionate amount of the operating expenses incurred by the defendants' company went toward generating

3

contacts with sellers (i.e., generating new business) than went toward attracting potential buyers who could be interested in the packets of information they sent out.

The defendants make an argument that any fraudulent activity amounts to nothing more than the individual acts of a specific telemarketer. A reasonable juror, however, could certainly look at the evidence presented by the government and conclude that ALL was a sham and that the defendants used it to perpetrate fraudulent telemarketing scheme. In sum, the arguments made by the defendants on appeal are arguments that interpret the potentially incriminating evidence in their favor. Such arguments are for the jury and not this appellate panel. We therefore find this evidence sufficient to support the defendants' convictions.

## II

All of the defendants take issue with a deliberate ignorance instruction given to the jury.[1] In general, deliberate ignorance instructions run the risk of encouraging the jury to convict on a lesser standard. We have held that the instruction should nonetheless be given when the evidence raises two inferences: "(1)

---

[1]The instruction reads:

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise be obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

the defendant was subjectively aware of a high probability of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct." United States v. Gray, 105 F.3d 956, 967 (5th Cir. 1997).

In this case, the government concedes that the instruction is only applicable to Bramlett. Although Bramlett was a part owner of the venture and both funded and organized it, he did not play much of a role in the day-to-day activities.[2] Because the instruction is not appropriate with respect to any of the other defendants, they argue that its effect was prejudicial.

We are presented, then, with the question of how a district court should proceed when a deliberate ignorance instruction is appropriate only with respect to one of a group of co-defendants. It is true that giving the instruction generally, without naming a specific defendant, may prejudice the co-defendants with respect to whom the evidence does not call for the instruction. On the other hand, however, singling out the defendant who merits the instruction, based, perhaps, on disputed or equivocal evidence, may be unfairly prejudicial to that defendant. The district court's proposed solution was to give the instruction and indicate that the instruction may not apply to all of the defendants. This is the approach followed by the First Circuit in United States v. Brandon,

_____

[2]Bramlett argues that, under Gray, the deliberate ignorance instruction should not have been given to him. The evidence in the record, however, supports both Gray inferences as applied to Bramlett.

5

17 F.3d 409, 453 (1st Cir. 1994). We agree both with the district court and the First Circuit that this is the best solution to this issue. We therefore find no error on the part of the district court.

## III

Finally, Bramlett argues that the district court erred by enhancing Bramlett's sentence under U.S.S.G. § 3B1.1(a). There has been a bit of confusion about the argument here because Bramlett's initial brief misstated which section of the guidelines the district court applied. According to the brief, the enhancement is pursuant to § 3B1.1(b). The government's brief continued the error, also making an argument about § 3B1.1(b). In his reply brief, Bramlett corrected the error, stating that his argument was that the enhancement under § 3B1.1(b) (3 points for management) applied to him, not the enhancement under § 3B1.1(a) (4 points for organizing or leading). Bramlett has since filed a motion to correct his brief, which has been granted.

Bramlett's argument is essentially that he never controlled or supervised anyone. However, as comment 4 to § 3B1.1 illustrates, Bramlett's activity clearly fits into the role of a leader or organizer. He was a part owner of the business, which entitled him to a larger share of the fruits of the crime. He also exercised a degree of control and authority over the venture. We therefore find that the district court did not err when it enhanced

6

Bramlett's sentence for organizing or leading the telemarketing scheme.

IV

For the foregoing reasons, the judgment of the district court is

A F F I R M E D.