UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 99-20165
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

PHILLIP S. PETERSON,
THEODORE F. CLARK,
SANDRA LYNN HOLICK, and
DEBRA WILLS O'KEEFE,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____

March 8, 2001

Before DUHE' and PARKER, Circuit Judges, and LINDSAY,[*] District Judge.

LINDSAY, District Judge:

I. BACKGROUND AND PROCEDURAL HISTORY

This case involves a telemarketing operation called American Land Liquidators ("ALL"),

which solicited fees from landowners to advertise their land for sale and put them together with

buyers. ALL collected more than $9,000,000 in fees from about 27,000 property owners, between

_____

[*] District Judge of the Northern District of Texas, sitting by designation.

June 1992 and May 1995, when the business was shut down by the government investigation. It spent less than 3% of the income on advertising the properties to prospective buyers. Fewer than than 1% of the property owners who paid fees to ALL sold their property as a result, and those who did usually sold at very low prices. The government characterized ALL as a fraudulent scheme, contending that ALL misrepresented the number of buyers available and the likelihood of sales, and that the landowners would not have paid marketing fees to ALL if they had known the truth. A prior case led to the convictions of several managers and organizers. *See United States v. Reissig*, 186 F.3d 617 (5th Cir. 1999), *cert. denied*, 528 U.S. 1094 (2000). In this case, defendants Phillip S. Peterson ("Peterson"), Theodore F. Clark ("Clark"), Sandra Lynn Holick ("Holick"), and Debra Wills O'Keefe ("O'Keefe") were each convicted of one count of conspiracy to commit mail fraud, wire fraud, and money laundering, in violation of 18 U.S.C. § 371; four counts of mail fraud, in violation of 18 U.S.C. §§ 2, 1341; and three counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

They appeal their convictions, asserting several points of error: 1) that the evidence was legally insufficient to support the convictions; 2) that evidence of other conduct was improperly admitted under Fed. R. Evid. 404(b); 3) that a motion to sever by Holick and O'Keefe was improperly denied and a related limiting instruction, concerning the Rule 404(b) evidence, requested by them was not given; and 4) that a "deliberate ignorance" jury instruction should not have been given. As to most of the defendants' arguments, we find no error on the part of the trial court. While the trial court may have erred in refusing to give a requested limiting instruction concerning the Rule 404(b) evidence of other conduct, we conclude that the court's refusal does not constitute an abuse of discretion. We therefore affirm the convictions.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

Clark, O'Keefe, and Holick challenge the sufficiency of the evidence to support their convictions for mail fraud, conspiracy to commit mail fraud, and money laundering. In reviewing a challenge as to the sufficiency of the evidence, we consider the evidence in the light most favorable to the prosecution and affirm if a reasonable juror could conclude that the government proved all essential elements of the offense beyond a reasonable doubt. *United States v. Richards*, 204 F.3d 177, 206 (5th Cir.), *cert. denied*, 121 S. Ct. 73 (2000). All evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is "free to choose among reasonable constructions of the evidence." *Id.* If the evidence is relatively balanced, a reasonable juror could not convict beyond a reasonable doubt, and we would be required to reverse the conviction in such instance. *Id.*

To prove mail fraud, 18 U.S.C. § 1341, the government must show (1) a scheme to defraud; (2) use of the mails to execute the scheme; and (3) the specific intent to defraud. *United States v. Rico Industries, Inc.*, 854 F.2d 710, 712 (5th Cir. 1988). To prove conspiracy, 18 U.S.C. § 371, the government must show (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy. *United States v. Dadi*, 235 F.3d 945, 950 (5th Cir. 2000). "The government must prove the same degree of criminal intent as is necessary for proof of the underlying substantive offense." *Id.* Clark, O'Keefe, and Holick challenge the conspiracy and mail fraud convictions on the ground that there was insufficient evidence of the required intent to defraud.

3

O'Keefe denies that ALL was engaged in a fraudulent scheme at all, asserting that it was just an unsuccessful venture. A similar argument was raised in *Reissig*. The evidence in the trial record as to the nature of the operation is essentially the same for this case as it was in *Reissig*. As we did there, we conclude that there was sufficient evidence to support the jury's conclusion that "ALL was a sham and . . . [a] fraudulent telemarketing scheme." *Reissig*, 186 F.3d at 619.

O'Keefe, Clark, and Holick further claim that, to the extent any representations they made were false, they had no knowledge that the representations were false. ALL was separated into a Seller's Division (the telemarketers, dealing with property owners) and a Buyer's Division (dealing with prospective buyers and handling complaints). The defendants were employed in the Seller's Division, and were ALL's top telemarketers. O'Keefe, Clark, and Holick claim that those in the Buyer's Division or in management would have been aware of the fraud but those in the Seller's Division were deliberately kept in the dark, thus negating the intent to defraud necessary for the mail fraud and conspiracy counts.

The government presented evidence at trial from which a reasonable juror could infer knowledge by the defendants that their representations (as to the large number of prospective buyers for the properties, how quickly the properties would sell, and so on) were false. For example, the defendants collected substantial sums from a large number of property owners (Clark - $137,805 from 379 individuals; Holick - $328,787 from 832 individuals; O'Keefe - $326,714 from 908 individuals). Only three of the properties for which Clark solicited fees were sold through ALL, all after he left ALL. Only twenty-seven of the properties for which Holick solicited fees were sold. Telemarketers received a bonus for each property that later sold, so the defendants would have been aware that very few of the properties for which they obtained advertising fees were actually sold.

4

The defendants point out that no bonus was paid when properties were sold directly from seller to buyer rather than through ALL, implying that the failure to receive bonuses did not mean that the properties were not selling. To support their claim that they were misled by ALL management, however, the defendants point out that the Buyer's Division constantly reported how well ALL was doing. Relying on such reassurances is inconsistent with the defendants' implied assumption that properties were being sold directly from seller to buyer. The jury could reasonably infer that the defendants knew that few properties sold at all, either through ALL or directly from seller to buyer. In addition, evidence showed that O'Keefe received complaints from customers, and had in her possession a summons and copy of a complaint in a lawsuit alleging misrepresentations by ALL and specific employees, including herself.

The defendants also challenge the sufficiency of evidence as to the money laundering counts. The money laundering statute prohibits two different categories of transactions — "promotion" money laundering, 18 U.S.C. § 1956(a)(1)(A)(i) ("with the intent to promote the carrying on of specified unlawful activity"), and "concealment" money laundering, 18 U.S.C. § 1956(a)(1)(B) ("to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity"). The defendants were charged only with the former. The transactions in question were disbursements for advertising, travel and entertainment (including hotels and casinos in Las Vegas), office and administrative expenses, and so on. For a conviction of promotion money laundering, "the Government must prove that the defendant (1) conducted or attempted to conduct a financial transaction, (2) which the defendant knew involved the proceeds of a specified unlawful activity, (3) with the intent . . . to promote specified unlawful activity . . . ." *United States v. Wyly*, 193 F.3d 289, 295 (5th Cir. 1999).

Holick argues that she had no knowledge of unlawful activity and therefore could not have intended to promote such activity. That argument fails for the same reason as does her argument that the evidence is insufficient to show that she had the intent to defraud. Clark argues that, as he did not personally make the disbursements in question, he was convicted of derivative responsibility as a member of a conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *United States v. Garcia*, 917 F.2d 1370, 1377 (5th Cir. 1990) ("A party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of the conspiracy, even if that party does not participate in or have any knowledge of the substantive offense."). Clark argues that the money laundering counts must fall since the evidence is legally insufficient for his conviction on the conspiracy count. Because we conclude that the evidence was sufficient for the conspiracy convictions, this argument also fails.

Clark and O'Keefe raise a more substantial argument — that a "promotion" money laundering count cannot be based on expenditures for legitimate business activities. *See, e.g., United States v. Brown*, 186 F.3d 661, 668-70 (5th Cir. 1999) (holding that payments for legitimate business expenses of the enterprise cannot support a "promotion" money laundering charge, absent a showing of intent such as expenditures that "were not necessary to the defendant's legitimate business operations and played an important role in his [illegal] scheme"); *United States v. Jackson*, 935 F.2d 832, 841 (7th Cir. 1991) (money laundering charge against leader of drug ring supported by expenditures for beepers, but not by expenditures for mobile phones, rent, and cash). This argument rests on two contentions: 1) that ALL was either primarily legitimate or could be divided into separate and distinct components, one of which was a legitimate business; and 2) that the expenditures on which the money

laundering counts are based were not associated with the unlawful part, if any, of ALL's activities. We reject both contentions.

As noted above, the evidence at trial was sufficient for a reasonable juror to conclude beyond a reasonable doubt that ALL was a fraudulent scheme. The defendants propose considering ALL as consisting in essence of two different businesses, one legitimate (advertising to find buyers for land, maintaining buyer profiles, mailing property listings, entering data into a computer database, and arranging the sales of a limited number of properties) and one illegitimate (recruiting property owners through fraudulent misrepresentations). We find this argument unpersuasive, and the decisions in *Brown* and *Jackson* inapposite.

*Brown* dealt with an automobile dealership which perpetrated several types of fraud on some of its customers, but these constituted "some relatively minor fraudulent transactions" by "an otherwise legitimate business enterprise." *Brown*, 186 F.3d at 670. The expenditures in question, for the basic operations of the dealership, only indirectly supported the fraudulent operations. *Id*. In this case, by contrast, the fraud was not restricted to isolated instances — the evidence presented at trial supports a conclusion that essentially all of the property owners who paid fees to ALL were treated to the same fraudulent misrepresentations. In *Jackson*, the defendant made both expenditures related to the illegal business (beepers) and personal expenditures (mobile phones, rent); the Seventh Circuit held that the former sufficed for promotion money laundering, while the latter did not. *Jackson*, 935 F.2d at 841. In this case, all the expenditures related to the illegitimate business operation.

We further note that ALL's operations were not two stand-alone divisions, each with its own revenue source sufficient to earn a profit. The Buyer's Division and Seller's Division each relied on

7

the existence of the other, and ALL's revenues came almost exclusively from the Seller's Division's solicitation of fees. Expenditures for the operation of the Buyer's Division, even if not absolutely required for the continued operation of the Seller's Division, would support the continued operation of ALL as a whole. When the business as a whole is illegitimate, even individual expenditures that are not intrinsically unlawful can support a promotion money laundering charge. *See, e.g., United States v. Coscarelli*, 105 F.3d 984, 990 (5th Cir.) (expenditures supported "promotion" money laundering charge when used to pay "the coconspirators, the telemarketers, and general operating expenses of the scheme"), *vacated*, 111 F.3d 376 (5th Cir.1997), *reinstated*, 149 F.3d 342 (5th Cir.1998); *United States v. Leonard*, 61 F.3d 1181, 1186 (5th Cir. 1995) ("paying callers, purchasing leads, paying phone bills" promoted the illegal telemarketing activity and supported money laundering charge). We think that a reasonable jury would conclude that this case more closely resembles *Coscarelli* and *Leonard* than *Brown* and *Jackson*. In addition, we note that at least some advertisements placed by ALL solicited both property owners and property sellers. The expenditures for advertising expenses therefore did support the fraudulent operations of the Seller's Division.

The evidence submitted at trial is not proof to an absolute certainty of the defendants' intent to defraud, for the conspiracy and mail fraud counts, or intent to promote an unlawful activity, for the money laundering count; however, such level of proof is not required. The defendants point to evidence from which one *could* conclude that they did not have the requisite intent to defraud and that the expenditures supporting the money laundering counts did not promote an unlawful activity — if believed by the jury. The jury was aware of the evidence and apparently assigned it little or no weight, which is exclusively within its province, and rendered the verdict accordingly. We are convinced that a reasonable juror could conclude that the government proved all essential elements

8

of the offenses beyond a reasonable doubt. Accordingly, we reject the defendants' argument as to insufficiency of evidence.

### B. Rule 404(b) Evidence

The government presented evidence pertaining to Peterson's conduct after he left ALL, which Peterson characterizes as "explosive and damning evidence of training other telemarketers to make misrepresentations," *see* Peterson's Brief at 3. Peterson contends that this evidence does not meet the standard of Fed. R. Evid. 404(b) governing admissibility of such evidence.

"The district court's decision to admit Rule 404(b) evidence is reviewed for abuse of discretion. This review is necessarily heightened in criminal cases." *Richards*, 204 F.3d at 199 (citations and internal quotation marks omitted). In making a Rule 404(b) determination, the trial court must "determine that the extrinsic offense evidence is relevant to an issue other than the defendant's character" and also "whether the evidence satisfies Rule 403." *Id*. (citing *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc)). Peterson challenges the evidence under both prongs of the *Beechum* test, arguing that future acts are not evidence of criminal intent in the past and that the evidence was unduly prejudicial. (Peterson's brief also discusses that the evidence in question came from a criminal investigation in Colorado which resulted in an indictment after the jury verdict in this case, but does not explain how that fact is relevant to the admissibility of the evidence, and we therefore ignore it.) We disagree as to both arguments.

The evidence was offered as evidence of Peterson's intent. Our prior decisions clearly allow for evidence of "bad acts" subsequent to the subject matter of the trial for the purpose of demonstrating intent. *See United States v. Catano*, 553 F.2d 497, 499-500 (5th Cir. 1977); *Roe v. United States*, 316 F.2d 617, 623 (5th Cir. 1963) ("Since this is a question of intent, acts done before

9

and after the crime charged are admissible if the circumstances show a sufficient connection from which inferences may reasonably be drawn."). The evidence of Peterson's future conduct would not be admissible to prove his *conduct* at ALL. Once the jury concluded that Peterson committed the conduct at issue, however, they could consider evidence of similar subsequent conduct (relatively closely linked in time), and evidence of his intent on that subsequent occasion, to draw inferences about the *intent* underlying his conduct at ALL. The order in which the charged conduct and the similar acts occur may affect which of the possible inferences the jury decides to draw, but does not preclude admission of the evidence.

We also conclude that the evidence was not unduly prejudicial. The jury heard eleven days of testimony, and the evidence in question took less than a half hour. This is not a situation where "[a] substantial portion of the total volume of testimony before the jury concerned extrinsic offenses," *see United States v. Zabaneh*, 837 F.2d 1249, 1265 (5th Cir. 1988). In addition, the court provided a limiting instruction at the end of the case. Accordingly, we conclude that the evidence satisfies both prongs of the *Beechum* test and the trial court did not abuse its discretion in admitting the evidence.

### C. Severance and Limiting Instruction

Because of the testimony of "bad acts" admitted against Peterson, O'Keefe and Holick filed motions to sever (before, during, and at the conclusion of the trial), which were denied. We review the denial of a severance motion for an abuse of discretion. *Richards*, 204 F.3d at 193. To prevail, "the defendant must show that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *Id*.

10

O'Keefe and Holick argue that the "bad acts" evidence would not have been inadmissible if they were tried alone, as it would be hearsay to them and also would violate their Sixth Amendment right to confrontation, *see Bruton v. United States*, 391 U.S. 123, 139 (1968), since Peterson did not testify. They contend that this testimony was severely prejudicial and that the trial court did not provide an adequate limiting instruction. The jury charge instructed the jury that they must give separate consideration to the evidence as to each defendant, and that Rule 404(b) evidence was admissible only for limited purposes. O'Keefe and Holick contend that the jury also should have been instructed specifically that Rule 404(b) evidence concerning acts by one defendant cannot be considered as evidence against another defendant.

We conclude that the risk of prejudice was not so high that it could be cured *only* by severance. A risk of prejudice may arise when "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant," but "[t]he risk of prejudice will vary with the facts in each case." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). We have previously noted, however, that severance is not necessarily the appropriate remedy. *United States v. Rocha*, 916 F.2d 219, 228-29 (5th Cir. 1990) ("severance is not required merely because the Government introduced evidence admissible only against individual co-defendants" and "severance is required on the basis of a disparity in the evidence only in the most extreme cases"); *United States v. Merida*, 765 F.2d 1205, 1219 (5th Cir. 1985) (severance is not required if "the jury could sort out the evidence reasonably and view each defendant and the evidence relating to that defendant separately"). As discussed above, the Rule 404(b) evidence was of limited extent and not unduly prejudicial to Peterson. An appropriate limiting

11

instruction, that the evidence of "bad acts" by Peterson should not be considered as to O'Keefe and Holick, would suffice to reduce the risk of prejudice.

The defendants complain that an appropriate limiting instruction was *not* given. They requested during trial, and were refused at that time, a limiting instruction pursuant to Fed. R. Evid. 105 as to the Rule 404(b) evidence. Although the better practice may be to give such a limiting instruction when the evidence is presented, *see* Rule 105, an instruction at the conclusion of trial will often be sufficient. *See, e.g., United States v. Cihak*, 137 F.3d 252, 258-59 & n.3 (5th Cir. 1998) (limiting instruction, apparently given at the conclusion of trial, was sufficient to cure any prejudice from Rule 404(b) evidence against a co-defendant). We conclude that the evidence was not so prejudicial and the trial was not so long that the delay in giving a limiting instruction rendered it inadequate.

The defendants claim that the limiting instruction at the conclusion of trial was not sufficiently detailed. It is not clear from the record whether anyone submitted a proposed instruction for the jury charge along the lines now suggested by defendants, that the Rule 404(b) evidence could not be considered for any purposes as to O'Keefe and Holick specifically. We assume, for purposes of discussion, that such a request was made. The trial court's error, if any, therefore can be characterized either as denial of the motion to sever or refusal to give the specific limiting instruction. We review the refusal to give a requested jury instruction for abuse of discretion. *Richards*, 204 F.3d at 204.

> Such a refusal requires reversal only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense.

*Id.*

The first part of this standard is satisfied, and we conclude that the second is as well. The trial court's actual instructions were as follows:

> A separate crime is charged against each of the defendants in each count of the indictment. Each count, and the evidence pertaining to it, should be considered separately and individually. The fact that you may find one or more of the accused guilty of any of the crimes charged should not control your verdict as to any other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.
>
> You have also heard of acts of some of the defendants which may be similar to those charged in the indictment, but which were committed on other occasions. You must not consider any of this evidence in deciding if those defendants committed the acts charged in the indictment. However, you may consider this evidence for other, very limited purposes.
>
> If you find beyond a reasonable doubt from other evidence in this case that the defendants did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine:
>> Whether those defendants had the state of mind or intent necessary to commit the crime charged in the indictment; or
>> Whether those defendants had a motive or the opportunity to commit the acts charged in the indictment; or
>> Whether those defendants acted according to a plan or in preparation for commission of a crime; or
>> Whether those defendants committed the acts for which he is on trial by accident or mistake.
>
> These are the limited purposes for which any evidence of other similar acts may be included.

We conclude that it might have been better to use actual names rather than "those defendants" in the instructions in order to make crystal clear to the jury that the Rule 404(b) evidence against Peterson could not be considered, even for "other, very limited purposes," against O'Keefe and Holick. *Compare Cihak*, 137 F.3d at 258 n.3 (jury instruction specified for which purposes and against exactly which defendants the evidence could be considered). We are not convinced, however,

13

that the trial court's denial of the motion to sever combined with the failure to give the requested limiting instruction was so prejudicial that it severely impaired O'Keefe and Holick's defense and constitutes reversible error. While the instructions given did not specify that the Rule 404(b) evidence could not be considered against O'Keefe and Holick specifically, the general instruction that the jury should "give separate consideration to the evidence as to each defendant" served much the same purpose and substantially reduced the risk of prejudice. *Cf. United States v. Hemmingson*, 157 F.3d 347, 357 (5th Cir. 1998). Given this general instruction, the limited extent of the Rule 404(b) evidence, and the totality of the other evidence against O'Keefe and Holick, we do not believe that they suffered "compelling prejudice" or received an unfair trial, and therefore conclude that the trial court's decisions did not constitute an abuse of discretion. *Cf. id*.

### D. Deliberate Ignorance Instruction

Finally, Clark and O'Keefe challenge the trial court's court's decision to submit a deliberate ignorance instruction. We review jury instructions to determine whether, as a whole, they are a correct statement of the law and are applicable to the factual issues in the case. *United States v. Faulkner*, 17 F.3d 745, 766 (5th Cir. 1994). A deliberate ignorance instruction is appropriate only "when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." *United States v. Threadgill*, 172 F.3d 357, 368 (5th Cir.), *cert. denied*, 528 U.S. 871 (1999). "The instruction is proper where the evidence shows (1) subjective awareness of a high probability of the existence of illegal conduct, and (2) purposeful contrivance to avoid learning of the illegal conduct." *Id*. Although a deliberate ignorance instruction should rarely be given, it is appropriate when supported by sufficient evidence. *Id*. Giving the instruction is error, but harmless error, if the government shows that the defendants had actual knowledge. *Id*.

14

The defendants do not challenge the accuracy of the instruction, only whether it is applicable. They claim that the government presented no evidence that they shut their eyes to evidence of fraud. We disagree.  As discussed above, the jury could reasonably infer from the evidence presented that the defendants had the requisit e intent to defraud.  That surely encompasses a conclusion that the defendants either: 1) were aware of a high probability that  ALL's operations constituted fraud but chose not to investigate (in which case the deliberate ignorance instruction was proper); or 2) actually knew that they were engaged in fraud (in which case the deliberate ignorance instruction constituted harmless error).  In either event, there is no reversible error here.

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.