United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 30, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-50250

_____

UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

MACE MCGREW, also known as Mace Lee McGrew
Defendant-Appellee

_____

Appeal from the United States District Court for the Western District of Texas
(No. 03-042)

_____

Before BARKSDALE and CLEMENT, Circuit Judges, and ENGELHARDT, District Judge.[*]

KURT D. ENGELHARDT, District Judge:[**]

Following a jury trial, appellant-defendant Mace McGrew ("McGrew") was convicted of possessing a firearm and ammunition after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). On appeal, McGrew challenges the sufficiency of the evidence supporting his conviction. Additionally, McGrew contends that his due process and Sixth Amendment rights were violated at trial, due to the government's alleged violation of the district court's discovery order and the consequent unanticipated admission of testimony regarding

---

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to **5th Cir. R. 47.5**, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in **5th Cir. R. 47.5.4.**

1

incriminating statements made by his co-defendant. McGrew argues that the district court abused its discretion in failing to order a mistrial on this basis. We hold that sufficient evidence was presented at trial for the jury to find McGrew guilty of the crime charged. We further hold that the trial court acted appropriately with respect to the government's alleged discovery violation and that McGrew's constitutional rights were not violated during the trial. Thus, we AFFIRM the judgment of the district court.

## I. FACTS AND PROCEEDINGS

On July 30, 2002, two local probation officers and two local sheriffs conducted a field compliance check at the residence of probationer Renee Chapman ("Chapman") after her probation officer was notified that narcotics were being manufactured and sold from the duplex. Chapman consented in writing to a search of the premises. Defendant McGrew, Chapman's boyfriend and the father of her infant child, was sitting on a couch in the living room when the officers arrived. McGrew was a parolee at the time.

While searching the home, the officers found an AK-47 assault rifle with a laser scope underneath the bed in the master bedroom. A lockbox and a bullet-proof vest were also found underneath the bed. Both Chapman and McGrew denied owning these items and identified the lockbox as the property of their friend William Tutt ("Tutt"), McGrew's co-defendant at trial. After receiving a phone call from McGrew, Tutt and his wife went to Chapman's house with the key to the lockbox. Inside the box were cash, a rifle magazine, a bag of ammunition and some small plastic bags. Other items, found elsewhere in the bedroom, included additional ammunition, an empty pistol holster, and some marijuana. McGrew claimed ownership of the marijuana, but both he and Chapman denied that the ammunition or pistol holster belonged to them. While at Chapman's house, the

2

officers also located clothing and a motorcycle that belonged to McGrew. McGrew was arrested at the scene for possession of the marijuana and the gun. Tutt was arrested days later. Both were charged with one count of possession of a firearm by a convicted felon.

Tutt's wife testified at trial that the seized rifle belonged to her father and that it had been kept at Tutt's mother's house for several years. When Tutt's wife saw the gun in her home in July of 2002, she demanded that it be removed. Tutt himself testified that, after his wife found the gun, he called McGrew and expressed a desire to get rid of the rifle. Tutt then went to Chapman's home late that night and was directed to the bedroom, where McGrew was lying, recovering from a motorcycle accident. He and McGrew conversed for a brief time before Tutt left.

A significant amount of testimony was adduced at trial regarding the events surrounding McGrew's and Tutt's arrests. Ultimately, Tutt was acquitted, and McGrew was convicted and sentenced to 51 months imprisonment, followed by 3 years of supervised release.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, McGrew contends that the evidence presented by the government at trial was insufficient to support his conviction. Because McGrew moved for a judgment of acquittal at the close of the government's case-in-chief and at the close of all of the evidence, he preserved his sufficiency claim for appellate review. *See United States v. Ferguson*, 211 F.3d 879, 882 (5th Cir. 2000). We review the denial of a motion for a judgment of acquittal *de novo. Id.* Accordingly, in evaluating whether the evidence presented was sufficient to convict McGrew, we must determine whether a rational trier of fact could have found that the evidence established the essential elements of the charged offense beyond a reasonable doubt. *Id. See also United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999); *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998). In

3

doing so, the court considers the evidence in the light most favorable to the government and the verdict and draws all reasonable inferences in support of the verdict. *Anderson*, 174 F.3d at 522. The jury is free to choose among reasonable constructions of the evidence. *Ferguson*, 211 F.3d at 882. Therefore, to confirm McGrew's conviction, we need not find that the evidence excludes every reasonable hypothesis of innocence or that the evidence is wholly inconsistent with every conclusion except that of guilt. *Id. See also United States v. Burton*, 126 F.3d 666, 669-70 (5th Cir. 1997) (quoting *United States v. Bermea*, 30 F.3d 1539, 1551 (5th Cir. 1994)).

To convict McGrew under 18 U.S.C. § 922(g)(1), the government had to prove that McGrew had previously been convicted of a felony; that he had possession of a firearm; and that the firearm in question traveled in and/or affected interstate commerce. *See* 18 U.S.C. § 922(g)(1).[1] *See also United States v. Daugherty*, 264 F.3d 513, 515 (5th Cir. 2001) (listing the three elements included in section 922(g)(1) and quoting *United States v. Gresham*, 118 F.3d 258, 265 (5th Cir. 1997)). A defendant need not own a firearm to possess it. *United States v. Jones*, 133 F.3d 358, 362 (5th Cir. 1998). Possession may be actual or constructive, and it may be proved by circumstantial evidence. *United States v. De Leon*, 170 F.3d 494, 496 (5th Cir. 1999). It is undisputed that McGrew did not actually possess the rifle at the time the officers discovered it–that is, he did not have knowing and direct physical contact with the gun. *See United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998) (defining "actual possession"). Accordingly, the government proceeded against McGrew at trial on a theory of constructive possession. Ordinarily, constructive possession may be

---

[1]18 U.S.C. § 922(g) provides, in pertinent part, that "it shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g) (2005).

4

found if the defendant had (1) ownership, dominion or control over the item itself or (2) dominion or control over the premises in which the item is found. *De Leon*, 170 F.3d at 496; *United States v. Hinojosa*, 349 F.3d 200, 203 (5th Cir. 2003). However, where two or more persons jointly occupy the place where a firearm is found, this court has held that mere control or dominion over the place is, by itself, insufficient to establish constructive possession. *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993) (quoting *United States v. Reese*, 775 F.2d 1066, 1073 (9th Cir. 1985)). *See also Hinojosa*, 329 F.3d at 203-204. In such cases, the evidence must support at least a "plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Mergerson*, 4 F.3d at 349.

McGrew specifically claims that the government failed to present sufficient competent evidence to establish the second element of section 922(g)(1)–possession. He states that the government did not prove that Chapman's residence was also his residence or that he exercised dominion or control over the residence. McGrew further argues that, even if the evidence was sufficient to support a finding that he and Chapman jointly occupied her residence, the government still failed to prove the possession element of section 922(g)(1), because it certainly did not show that he had knowledge of the gun's presence in Chapman's home. In support of this assertion, he states that uncontradicted testimony adduced at trial indicated that the gun was not in plain view and that he was drowsy on the night in question due to pain medication and alcoholic beverages that he had consumed.

Although conflicting testimony was given regarding whether McGrew was residing at Chapman's home at the time the gun was found, sufficient evidence was presented at trial for the jury to have determined that the element of dominion or control over the premises was established

beyond a reasonable doubt. Probation officer Brian Brady, who, with other officers, conducted the field compliance check at Chapman's home, testified that Chapman's supervising officer had received notice that Chapman was living with a parolee, McGrew, and that narcotics were being manufactured and sold from her residence. Brady further testified that, upon entry of the residence, he observed McGrew seated with a newborn on the couch in the living room, and that McGrew initially was upset that the officers were at the residence. Brady stated that, during the search, officers asked Chapman where her bedroom was and that, in response, Chapman directed the officers to the master bedroom, which, she told them, was where she and McGrew slept. According to Brady, the officers located a shoebox containing marijuana and McGrew's clothing in the bedroom closet. Brady further stated that the officers found McGrew's motorcycle in the garage of Chapman's residence.

Bexar County Sheriff's Department Deputy Robert Gallegos, who assisted with the compliance check, testified that, after the items had been recovered from the master bedroom, McGrew denied owning the firearm but acknowledged that he allowed Tutt to bring the firearm to the residence and to place it under the bed. He further stated that McGrew admitted that the marijuana found in the closet was his. Additionally, Gallegos testified that he overheard a conversation in which Chapman identified McGrew as living at the residence with her and as being the father of her infant child.

McGrew's co-defendant William Tutt also testified at the joint trial. Tutt stated that he had informed McGrew that he had a firearm that he wanted to get rid of and asked McGrew if he would be willing to accept it. According to Tutt, McGrew told him to "bring it over" and "let [him] check it out." Tutt stated that it was his intention to "get rid of [the weapon]." An affidavit, which Tutt executed, was also introduced at trial. In the affidavit, Tutt stated that, upon arriving at

6

Chapman's home, he went to the back bedroom and had a conversation with McGrew about an earlier argument between Tutt and his wife, during which conversation he told McGrew that he was going to leave some of his items there until the next day. According to Tutt, McGrew told him to place the items underneath the bed so that Chapman would not get upset. Both in his affidavit and at trial, Tutt stated that he understood that McGrew did not want Chapman to know that the items were in the house.

Chapman testified that McGrew lived with his mother but stayed at her house a couple of nights out of the week. Chapman further testified that between July 23 and July 30, 2002, McGrew stayed with her "a little bit longer" because of injuries he had sustained in a motorcycle accident. Chapman also stated that McGrew was a good father to their infant daughter and that, once she was born, McGrew did spend a little more time at her house.

Based on the foregoing evidence, it can be reasonably inferred that McGrew exercised dominion and control over the residence. The uncontroverted testimony revealed that he stayed at the residence at least a few nights per week and that he had been staying there more often at the time the officers conducted the field compliance check. The discovery of McGrew's marijuana and clothes in the closet of the master bedroom also indicate that he was more than a casual visitor. Moreover, the fact that McGrew allowed another person to keep items at the house without Chapman's knowledge or permission indicates that he indeed had control over the residence. When viewed as a whole, the evidence demonstrates that McGrew could come and go as he pleased and, thus, jointly occupied Chapman's residence.

In addition to the joint tenancy inquiry, which focused on McGrew's dominion and control over the residence, we must also find that the evidence supports at least a plausible inference

that McGrew had knowledge of and access to the firearm. *Mergerson*, 4 F.3d at 349. In this vein, McGrew notes that the firearm was hidden under the bed and not in plain view and argues that, because of this, no reasonable juror could have inferred that he had knowledge of the item. This argument fails for several reasons. First, the fact that the firearm was found underneath the bed indicates a desire to conceal the existence of the illegal item. *See De Leon*, 170 F.3d at 497. As we stated in *De Leon*, "[t]he suspicious location of the [firearm] may be used to infer that [the defendant] had control over the house and that he knowingly possessed control over the [firearm]." *Id.* More importantly, as set forth above, Deputy Gallegos testified that, after the firearm had been recovered from the master bedroom, McGrew acknowledged that he allowed Tutt to bring the firearm to the residence and to place it under the bed. That testimony, combined with the testimony elicited from Tutt regarding the events surrounding the delivery of the firearm to Chapman's home, supports the conclusion that McGrew was aware of the existence of the firearm in the home. Moreover, the uncontradicted testimony presented regarding where the gun was found–on the floor in the bedroom where McGrew slept–supports the conclusion that McGrew had access to the gun.

Although conflicting testimony was presented at trial with respect to whether McGrew constructively possessed the gun, we give credence to all reasonable inferences drawn, and credibility choices made, in support of the verdict. *See Ortega Reyna*, 148 F.3d at 543. Additionally, while previous cases on constructive possession serve as illustration only, *see United States v. Onick*, 889 F.2d 1425, 1429 (5th Cir. 1989), this court's holding in *United States v. De Leon*, wherein the defendant's section 922(g)(1) conviction was affirmed, supports a finding that McGrew knowingly possessed the gun at issue. In *De Leon*, we held that a reasonable jury could infer that the defendant constructively possessed ammunition found during the execution of a search warrant at the

8

defendant's girlfriend's house where a parole document directed to the defendant, men's clothing and the box of ammunition was found in a child's dresser, and testimony indicated that the defendant slept at the house up to a week at a time. 170 F.3d at 497. Additionally, the defendant's fingerprint was found on the box of ammunition. *Id*. The evidence presented in the instant case regarding knowing possession is as persuasive, if not more so, than that presented in *De Leon*. Viewing the evidence as a whole and in the light most favorable to the verdict, we find that a rational jury could have reasonably concluded that the evidence established beyond a reasonable doubt that McGrew had knowing control over the assault rifle.

## III.  RULE 16 DISCOVERY VIOLATION

McGrew also contends on appeal that his due process rights were violated at trial, due to a discovery error on the part of the government and the resulting unanticipated admission of evidence regarding incriminating statements made by his co-defendant. He further asserts that the district court erred in failing to order a mistrial on this basis. We review the denial of a motion for mistrial for abuse of discretion. *United States v. Dupre*, 117 F.3d 810, 823 (5th Cir. 1997). Likewise, alleged errors in the administration of discovery rules are reviewed for an abuse of discretion, and reversal or a new trial should not be ordered upon such basis unless the defendant demonstrates prejudice to his substantial rights. *United States v. Holmes*, 406 F.3d 337, 357 (5th Cir. 2005). *See also United States v. Doucette*, 979 F.2d 1042, 1044-1045 (5th Cir. 1992); *United States v. Ible*, 630 F.2d 389, 397 (5th Cir. 1980) (stating that "a failure to comply with Rule 16(a) [of the Federal Rules of Criminal Procedure] is not reversible error in the absence of a showing of prejudice").

9

At trial, ATF[2] Special Agent Gena Alvarez ("Alvarez"), who arrested Tutt, testified that, after she read Tutt his *Miranda* rights, Tutt told her that he wanted to cooperate and that he would gladly discuss the gun with her. Alvarez then testified as follows:

> [Tutt] told me that on the night before Mace [McGrew] was arrested he took the gun, ammunition, money, and a safe over to Mace McGrew's house, that once he got over there they had a couple of drinks, they talked about the gun, and that, he definitely knew that the gun was under the bed because they talked about the gun.

On cross-examination by McGrew's counsel, Alvarez testified that she had prepared a written report of Tutt's statement. McGrew's attorney indicated that he was unaware of Alvarez's report, leading the government to provide him with a copy of the report at that time. Raising no objections, McGrew's counsel tendered the witness after a few more questions.

The next day, McGrew filed a motion for mistrial or, alternatively, for the exclusion of Tutt's statement to Alvarez and a limiting instruction. In his motion, McGrew contended that the government violated Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16"), and, consequently, the general discovery order of the trial court,[3] by failing to provide Tutt's extrinsic statement, in either oral or written form, to either defendant prior to trial, causing prejudice to both of them. McGrew reurged his motion for mistrial prior to the close of all of the evidence. There is no indication that the district court ever ruled on McGrew's motions, but at the end of the trial, the parties and the court extensively discussed a proposed limiting instruction. McGrew stated that he had no objections to the final jury charge, which included an instruction to the jury to completely and

---

[2]Bureau of Alcohol, Tobacco & Firearms

[3]In the trial court's discovery order, it instructed the parties to comply with Rule 16 of the Federal Rules of Criminal Procedure.

10

totally disregard the testimony of Alvarez. After the jury returned its verdicts, McGrew filed motions for an instructed verdict and for a new trial, which the district court denied.

McGrew now argues that the district court should have granted a mistrial due to the government's failure to comply with the general discovery order and that it abused its discretion in failing to do so. As he did during trial, McGrew contends on appeal that, had he known of the existence of Tutt's statement, he would have filed a motion for severance, which, he claims, would have necessarily been granted, protecting him from the prejudicial testimony elicited from Alvarez. The deprivation of the opportunity to seek a severance, he argues, resulted in a violation of his due process rights. McGrew additionally cites *Chambers v. Mississippi*, 410 U.S. 284 (1973), for the proposition that an accused's right to due process includes the right to a fair opportunity to defend against the accusations against him. He argues that he was not afforded an adequate opportunity to defend against the government's allegations, as he relied on the government's disclosures as being complete and, consequently, was taken aback by Alvarez's testimony. McGrew urges that this testimony was greatly prejudicial and that its unanticipated admission resulted in a further violation of his right to due process. He further asserts that the limiting instruction given to the jury regarding Alvarez's testimony was insufficient to cure prejudice that resulted to him from said testimony.

As a preliminary matter, we must consider whether the record of Tutt's extrajudicial statement prepared by Alvarez even falls within the purview of Rule 16 and the district court's general discovery order. Neither McGrew nor the government has advanced any arguments on appeal in this regard. Upon reviewing Rule 16, we find section (a)(1)(E) applicable to the facts at hand. Section (a)(1)(E) provides as follows:

Upon a defendant's request, the government must permit the

11

> defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

FED. R. CRIM. P. 16(a)(1)(E). The report prepared by Alvarez is a document that the government intended to use, and did in fact use, during its case-in-chief.[4] Therefore, the government was obligated, upon request by McGrew, to disclose Alvarez's report to him prior to trial, which it failed to do. Because we find that the government indeed violated Rule 16 and the discovery order, we must determine whether the trial court abused its discretion in failing to grant a mistrial on this basis and in attempting to correct the error with a jury instruction.

Section (d)(2) of Rule 16 provides the district court with several options for remedying a party's failure to comply with the rule, including the option to "enter any other order that is just under the circumstances." *See* FED. R. CRIM. P. 16(d)(2)(D). Taking into consideration the circumstances of this case, the district court determined that granting a mistrial was unnecessary and that providing the jury with a limiting charge would sufficiently remedy the government's discovery error. The district judge specifically told the jurors that it was their sworn duty to follow all of the rules of law as explained. Further, with respect to the testimony at issue, the district judge instructed the jurors as follows: "Special Agent Gena Alvarez, of the Bureau of Alcohol, Tobacco, and Firearms, testified about an interview with defendant William Christopher Tutt after his arrest. You are to *completely and entirely ignore and disregard* her testimony regarding this interview."

---

[4]The government called Alvarez to the stand for direct examination, and her testimony was based upon her post-arrest conversation with McGrew, which conversation was memorialized in the investigation report that she made.

(emphasis added). We do not believe that the district court abused its discretion in addressing the government's discovery error with this order.

This court has held that a prejudicial remark may be rendered harmless by curative instructions to the jurors. *United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998). Furthermore, jurors are presumed to follow the instructions given to them. *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998). McGrew has not overcome this presumption. He contends that the district court's brief instruction to the jury to disregard Alvarez's testimony, given two days after such testimony was elicited, was insufficient and could not have conceivably cured the error created by the untimely disclosure of Alvarez's post-arrest conversation with Tutt. In sum, he argues that the limiting instruction was too little, too late. The court finds McGrew's argument unconvincing. Significantly, as noted above, McGrew stated at trial that he had no objections to the jury instructions, which instructions contained the charge that he now challenges as insufficient. Additionally, we note that "[a]lthough the better practice may be to give ... a limiting instruction when the evidence is presented, ... an instruction at the conclusion of trial will often be sufficient." *See United States v. Peterson*, 244 F.3d 385, 394 (5th Cir. 2001). Here, the evidence was not so prejudicial and the trial was not so long that the delay in giving a limiting instruction rendered it inadequate, such that a mistrial or severance should have been granted. *See id*. Rather, the instruction given by the district judge at the close of the evidence was direct and sufficient to cure any prejudice to the defendant's trial rights.

Even if we found that the district court should have taken alternative, more aggressive, measures to address the government's failure to disclose, such a finding would not require reversal here, because McGrew has not shown that the district court's actions resulted in prejudice to his

13

substantial rights. With respect to McGrew's claim that the government's failure to provide him with notice of the evidence it had concerning Tutt's incriminating statement robbed him of the opportunity to seek a severance, the general rule in this circuit is that defendants who are indicted together should be tried together. *United States v. Barnett*, 197 F.3d 138, 145 (5th Cir. 1999). *See also Zafiro v. United States*, 506 U.S. 534, 537 (1993) (stating that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" due to the fact that joint trials promote efficiency and aid in the avoidance of inconsistent verdicts). Rule 8 of the Federal Rules of Criminal Procedure allows two or more defendants to be charged in the same indictment if they allegedly participated in the same act or transaction constituting an offense. *See* FED. R. CRIM. P. 8(b). Rule 14 of the Rules, in turn, allows a trial court to sever the trials of two or more defendants who are joined in an indictment in cases where the joinder "appears to prejudice a defendant or the government." FED. R. CRIM. P. 14(a). The rule does not require severance, however, and upon a showing of prejudice, the determination of relief to be granted, if any, due to the existence of prejudice, is within the sound discretion of the district court. *See Zafiro*, 506 U.S. at 538-539. Significantly, the Supreme Court has cautioned that the remedy of severance should be used sparingly. *Id*. Accordingly, in *Zafiro v. United States*, the Court stated that where defendants have been properly joined under Rule 8(b), a severance should not be ordered unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*.[5] Importantly, the Court further noted in *Zafiro* that less drastic measures, including limiting instructions, often suffice to cure the risk

[5]The Fifth Circuit has held likewise. *See e.g.*, *United States v. Cihak*, 137 F.3d 252, 259 (5th Cir. 1998); *United States v. Tarango*, 396 F.3d 666, 673-674 (5th Cir. 2005) (quoting *Zafiro*).

14

of prejudice. *Id.*

In the instant case, there is no dispute that the defendants were properly joined under Rule 8(b).[6] Thus, in order for McGrew to have been granted a severance by the district court, he must have been able to point to a specific trial right that would have been compromised by a joint trial with Tutt, or show that such a trial would have likely resulted in an unreliable jury verdict. McGrew has not demonstrated that he would have been able to satisfy either of these requirements. On appeal, McGrew only refers to one trial right that was allegedly compromised by a joint trial with Tutt–his Sixth Amendment right to confront an adverse witness. As discussed *infra,* section IV, McGrew's argument that his Sixth Amendment right was violated at trial is completely without merit. Moreover, he has not even attempted to argue that his joint trial resulted in an unreliable jury verdict. In light of this and in light of the fact that joint trials for co-defendants are encouraged, it is highly unlikely that the district court would have granted a motion to sever had McGrew filed one prior to trial. Thus, McGrew has not shown that he was prejudiced in this respect by the remedial measures taken by the district court.

We additionally find McGrew's argument that his rights were prejudiced because he was not afforded an adequate opportunity to defend against the government's allegations to be without merit. McGrew's reliance on *Chambers* in this regard is misplaced. In *Chambers*, the Supreme Court held that where, due to certain Mississippi evidentiary rules, the defendant was denied

---

[6]Rule 8(b) provides as follows: "The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). Unarguably, McGrew and Tutt were alleged to have participated in the same series of acts or transaction constituting offenses–specifically, Tutt's delivery of a firearm to the residence where McGrew was located, when both men were convicted felons.

15

an opportunity to cross-examine witnesses that gave "damning" testimony, his due process rights were violated because he did not have a fair opportunity to defend against the state's allegations against him. *Chambers*, 410 U.S. at 294. The Court largely based its conclusion on the following excerpt from Justice Black's opinion in *In re Oliver*, 333 U.S. 257, 273 (1948):

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense–a right to his day in court–are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

The fact that McGrew was surprised by certain evidence presented against him does not equate to him having been given inadequate notice of the government's allegations against him. To the contrary, McGrew was made well aware of the charges being brought against him by the indictment filed. No surprise accusations were made against him at trial. Alvarez's testimony only tended to show what the testimony of several other witnesses showed–that McGrew knowingly possessed the gun at issue. In fact, no information was revealed by Alvarez's brief testimony that wasn't revealed by Tutt's own testimony. Furthermore, McGrew was never denied the opportunity to be heard or to offer testimony; nor was he denied the opportunity to confront and cross-examine Alvarez. Likewise, as set forth herein below, he had an opportunity to cross-examine Tutt, the source of the incriminating statement, who testified at trial.

## IV.  MCGREW'S SIXTH AMENDMENT CLAIM

As a further basis for reversal, McGrew argues that his Sixth Amendment right to confront and cross-examine Tutt, a witness against him, was violated due to the admission of Tutt's extrajudicial statement through Alvarez's testimony. McGrew cites *Bruton v. United States*, 391 U.S. 123, 126 (1968), in which the Supreme Court found that the Sixth Amendment right of an

16

accused to confront the witnesses against him includes the right of cross-examination. Pursuant to *Bruton*, a defendant's right to confrontation is violated when "(1) several co-defendants are tried jointly, (2) one defendant's extrajudicial statement is used to implicate another defendant in the crime, and (3) the confessor does not take the stand and is thus not subject to cross-examination." *United States v. Restrepo*, 994 F.2d 173, 186 (5th Cir. 1993). In the case *sub judice*, no constitutional violation occurred because, as stated above, Tutt took the stand at trial. *See United States v. Weinrich*, 586 F.2d 481, 495 (5th Cir. 1978) (holding that no *Bruton* violation occurred where defendants were given the right to confront on cross-examination a co-defendant who testified at trial). McGrew therefore had the opportunity to cross-examine Tutt in open court regarding the statement made to Alvarez. He chose, however, not to do so.

In his reply brief, McGrew argues that, despite Tutt's having testified at trial, his Sixth Amendment right to confrontation was effectively violated because he was faced with two unattractive options–to either cross-examine Tutt and draw additional attention to his statement, or to ignore the statement in hope that the jury would give little or no weight to it. A review of this circuit's rulings pertinent to *Bruton* violations reveals no propensity to expand *Bruton* to include situations where counsel makes a strategic decision to not cross-examine the testifying co-defendant. *See United States v. Maddox*, 492 F.2d 104, 107 (5th Cir. 1974) (stating that the right to confrontation is fulfilled at the time the co-defendant confessor takes the stand). Therefore, we find McGrew's argument to be without merit.

## V. CONCLUSION

McGrew has failed to show that the evidence was insufficient to support his conviction under 18 U.S.C. § 922(g)(1). He further has failed to show that the trial court abused its discretion

17

in failing to grant a mistrial based on the government's violation of the general discovery order or that

his Sixth Amendment rights were violated.  Accordingly, we AFFIRM.