REVISED, June 30, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-40166

_____


ALVIN WAYNE CRANE,

                                   Petitioner-Appellant,

                    VERSUS

    GARY JOHNSON, Director, Texas Department of Criminal Justice,
                   Institutional Division,

                                   Respondent-Appellee.


_____

            Appeal from the United States District Court
              For the Eastern District of Texas
_____
                      June 8, 1999

Before KING, DAVIS, and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

     Alvin Wayne Crane, convicted of murder and sentenced to death
by a Texas state court, appeals from the district court's denial of
his petition for a writ of habeas corpus.  Because we conclude that
Crane has failed to make a substantial showing of the denial of a
federal right, we deny him a certificate of probable cause ("CPC")
and vacate the stay of execution.

                              I.

     Crane was convicted of killing Melvin Drum, the Chief Deputy
Sheriff of Ochiltree County, Texas.  On March 28, 1987, Crane was
involved in a domestic dispute with his wife, Linda Crane, at his
wife's place of employment, the Spicer residence in Perryton,

Texas. Drum was called to investigate the dispute and drove to the Spicer residence. Although Drum was driving an unmarked vehicle and was out of uniform, witnesses testified at trial that a red police light was flashing on the dashboard of his vehicle. After Drum parked his vehicle but before he was able to exit from it, Crane approached him with a shotgun and shot him. Crane then fled but was captured several hours later in Beaver County, Oklahoma.

Crane was tried and convicted of capital murder in Texas state court on November 13, 1987. During the punishment phase of his trial, the State introduced evidence concerning Crane's two convictions for delivery and possesion of marijuana. The State also introduced evidence concerning Crane's conviction on a misdemeanor assault charge. Crane introduced no evidence during the punishment phase of his trial.

The jury affirmatively answered the required special issues set out in Tex. Code Crim. P. Ann. art. 37.071,[1] and Crane was sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence. *Crane v. State*, 786 S.W.2d 338 (Tex. Crim. App. 1990).

On November 28, 1990, Crane filed his first petition for writ

---

[1] Article 37.071 then provided:
(1) [W]hether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

2

of habeas corpus in state court. The trial court recommended that Crane's petition be denied, and the Texas Court of Criminal Appeals denied habeas relief on March 11, 1992. *Ex Parte Crane*, No. 71,250 (Tex.Crim.App. March 11, 1992) (en banc) (per curiam). Crane's petition for a writ of certiorari was denied by the United States Supreme Court on January 11, 1993. *Crane v. Texas*, 506 U.S. 1055, 113 S.Ct. 983, 122 L.Ed.2d 136 (1993). Crane then filed a second petition for writ of habeas corpus in state court. The trial court entered findings of fact and conclusions of law, recommending that the petition be denied. The Court of Criminal Appeals adopted the trial court's findings of facts and conclusions of law with three exceptions and denied relief. *Ex Parte Crane*, No. 21,704-04 (Tex.Crim.App. April 19, 1994) (en banc) (per curiam). The United States Supreme Court again denied Crane's petition for a writ of certiorari on October 31, 1994. *Crane v. Texas*, 513 U.S. 966, 115 S.Ct. 432, 130 L.Ed.2d 344 (1994).

Crane filed the present petition for writ of habeas corpus in federal district court in February 1995. The district court referred the case to a magistrate judge who conducted an evidentiary hearing and recommended that relief be denied. The district court adopted the recommendation of the magistrate judge and denied Crane's claims. Crane filed a notice of appeal and applied for a CPC with the district court. The district court denied the CPC.

## II.

Because Crane filed his federal habeas petition prior to the passage of the 1996 Antiterrorism and Effective Death Penalty Act

3

("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996), the regime set forth in the AEDPA does not apply to the instant appeal. *See Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Therefore, we apply pre-AEDPA habeas law to Crane's claims.

Before the enactment of the AEDPA, a petitioner could not appeal a district court's denial of a habeas petition that concerned detention arising from state court proceedings unless a district or circuit judge granted the petitioner a CPC. *Green v. Johnson*, 116 F.3d 1115, 1120 (5th Cir. 1997). To obtain a CPC, the petitioner must make a "substantial showing of a denial of [a] federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (internal quotes and citation omitted). This showing requires the petitioner to demonstrate "that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Id*. at 893 n.4, 103 S.Ct. at 3394 n.4.

In reviewing a federal habeas corpus petition presented by a petitioner in state custody, federal courts must accord a presumption of correctness to state court factual findings. *See* 28 U.S.C. § 2254(d). We review a district court's findings of fact for clear error and issues of law *de novo*. *Moody v. Johnson*, 139 F.3d 477, 480 (5th Cir.), *cert. denied*, _ U.S. _, 119 S.Ct. 359, 142 L.Ed.2d 297 (1998) (citing *Barnard v. Collins*, 958 F.2d 634, 636 (5th Cir. 1992), *cert. denied*, 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993)).

III.

4

Crane's principal claim is that he was denied his Sixth Amendment right to effective counsel.  He argues that he received ineffective assistance of counsel because (1) trial counsel failed to investigate and to present readily available evidence of Crane's insanity at the time of the offense, and (2) trial counsel failed to present mitigating evidence at the punishment phase.  Neither of these claims has merit.

An ineffective assistance of counsel claim is evaluated under the standard announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Crane must demonstrate both that counsel's performance was deficient and that the deficiency prejudiced the defense such that the result of the trial would have been different.  *Id*. at 687, 104 S.Ct. at 2064.  Both prongs must be shown by a preponderance of the evidence.  *Rector v. Johnson*, 120 F.3d 551 (5th Cir. 1997).  Because an ineffective assistance of counsel claim is a mixed question of law and fact, we review the district court's decision *de novo*.  *Green*, 116 F.3d at 1122.  However, as noted above, the historical findings of fact are entitled to a presumption of correctness.  *Id.  See also Westley v. Johnson*, 83 F.3d 714, 720 (5th Cir. 1996), *cert. denied*, 519 U.S. 1094, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997).

To establish the first prong of deficient performance, Crane must show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment."  *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  However, this Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting

5

effects of hindsight." *Id*. at 689, 104 S.Ct. at 2065. Therefore, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* We will not find ineffective assistance of counsel merely because we disagree with counsel's trial strategy. *See Green*, 116 F.3d at 1122.

For the second prong, Crane must show a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir.), *cert. denied*, _ U.S. _, 118 S.Ct. 361, 139 L.Ed.2d 281 (1997). Rather, the defendant must demonstrate that the prejudice rendered sentencing "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993)). With this legal background, we turn to a consideration of Crane's specific claims of ineffective assistance of counsel.

## A.

Crane first contends that his trial counsel's conduct was professionally unreasonable because they failed to investigate and present evidence of Crane's insanity at the time of the offense. This claim was presented to the state courts in Crane's second state habeas application. The trial court entered detailed findings of fact and conclusions of law and recommended that relief

6

be denied.  The Texas Court of Criminal Appeals adopted the trial court's finding number nine,[2] which provides in part:

> [T]he Court finds that [Crane's] contention that his trial attorneys did not investigate a possible insanity defense for him is not true.  The insanity defense was considered, investigated, and rejected by [Crane's] trial attorneys.  It was rejected for a good reason -- it was not a viable defense.  The State has obtained numerous affidavits demonstrating that the insanity defense was investigated by defense counsel, and that any such insanity defense would have been spurious.

The district court correctly noted that these findings were entitled to a presumption of correctness under 28 U.S.C. § 2254(d) because they are fairly supported by the record.

Our review of the record shows that Crane's trial counsel, Gene Storrs and Stephen Cross, investigated whether Crane's injuries from a motorcycle accident in 1981 could have resulted in some mental impairment that interfered with Crane's abilities to act intentionally and deliberately.  Trial counsel had the report of Dr. Michael Buben, who examined Crane while he was incarcerated in Ochiltree County, which stated that Crane suffered from persistent, recurrent headaches over the right frontal region.  Trial counsel then consulted Dr. Joseph Batson, a neurologist, who examined Crane in September 1987.  Dr. Batson ordered a CT scan and an EEG, both of which failed to show any abnormality.

In light of this information, trial counsel decided that although they would introduce these medical records before the

---

[2]  Although Crane argues that the Texas Court of Criminal Appeals declined to adopt the trial court findings on the claims of ineffective assistance of counsel for failure to investigate an insanity defense and for failure to present mitigating evidence at the punishment phase, the Texas Court of Criminal Appeals only rejected the trial court findings that these claims were procedurally barred.

jury, they would not further develop the insanity issue. In affidavits attached to the State's answer to Crane's second state habeas petition, Gene Storrs and Stephen Cross stated that they had investigated the merits of raising an insanity defense but were not confident that the evidence was adequate to raise the issue. The examinations conducted by Dr. Buben and Dr. Batson suggested that even if Crane had some dysfunction due to his motorcycle accident, this dysfunction did not rise to the level of interfering with his abilities to act intentionally and deliberately. Trial counsel also stated that they were concerned about opening the door to damaging testimony concerning Crane's violent tendencies if the issue of insanity were raised.

Thus, Crane's trial counsel did investigate the possibility of an insanity defense, but, relying on the reports of Drs. Buben and Batson, as well as their own observations of Crane, they made a tactical decision not to raise this defense due to the lack of sufficient evidence and their concern about drawing damaging rebuttal psychiatric testimony from the State. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing). The evidence shows that trial counsel's decision not to present an insanity defense was a "conscious and informed" tactical one. Therefore, we conclude that Crane has not made a substantial showing of the denial of a constitutional right on this claim of ineffective assistance of counsel.

Crane next contends that his trial counsel were ineffective for failing to present at the punishment phase of his trial mitigating evidence that was either known or should have been known to them. Crane maintains that his counsel did not present mitigating evidence of his family background or his possible mental impairment. The magistrate judge conducted a two-day evidentiary hearing on the issue of counsel's performance at the punishment phase and found that trial counsel made a strategic decision not to introduce available mitigating evidence for the following reasons. Counsel believed that Crane's best chance of prevailing at the penalty phase was to obtain a favorable jury response on the future dangerousness issue. Alternatively, counsel wanted to preserve the objection on appeal that an affirmative answer to the future dangerousness issue was not supported by sufficient evidence. Because counsel believed that the available mitigating evidence would likely have drawn rebuttal evidence from the State that would have bolstered the State's argument on future dangerousness, they did not introduce this evidence so as not to defeat their strategy.

We have made it clear that the failure to present mitigating evidence does not per se demonstrate ineffective assistance of counsel. *Rector*, 120 F.3d at 564. "If such an omission is based on well informed, strategic decisions, it is 'well within the range of practical choices not to be second-guessed.'" *Id.* (quoting *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied*, 509 U.S. 921, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993)). After carefully reviewing the record, we conclude that Crane has

failed to establish that his counsel were deficient in declining to present the mitigating evidence concerning Crane's alleged mental impairment and his family background.

As to the evidence concerning Crane's possible mental impairment, trial counsel testified that after investigating a possible mental impairment,[3] they were concerned that the evidence would have been aggravating because it would have necessarily revealed Crane's "rages" and "blackouts" that accompanied the alleged mental impairment. Furthermore, they had reason to believe that if they put on such psychiatric evidence, the State would have called a psychiatrist to testify about Crane's violent tendencies. Bruce Roberson, the Ochiltree County Attorney who prosecuted Crane, confirmed that counsel's concerns were well founded. He testified at the evidentiary hearing that the State would have presented its own psychiatric evidence, specifically the testimony of Dr. James Grigson, to rebut any evidence of Crane's possible mental impairment presented by the defense. Given the equivocal nature of the expected testimony of Drs. Buben and Batson, counsel concluded that the risk of drawing damaging psychiatric testimony from the State outweighed the benefits of this evidence. Additionally, the district court, after hearing the testimony of several doctors at the evidentiary hearing, found that Crane failed to show any reliable evidence of mental impairment.

Trial counsel believed that evidence of Crane's family background also would have been more harmful than helpful on the

---

[3]  See discussion in section II.A., *supra*.

future dangerousness issue.[4] Gene Storrs testified that he thought that the danger of family members testifying on cross examination about Crane's fits of rages and blackouts far outweighed any benefit that Crane might have received from family members saying that they felt like Alvin Crane was a "nice man."

All of the evidence that Crane contends should have been presented at the punishment phase of his trial had a double-edged quality. Trial counsel decided the evidence was potentially more harmful than helpful. Such strategic decisions are given a "'heavy measure of deference.'" *Mann v. Scott*, 41 F.3d 968, 984 (5th Cir. 1994), *cert. denied*, 514 U.S. 1117, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995) (quoting *Wilkerson*, 950 F.2d at 1054). Crane has failed to overcome the strong presumption that these informed tactical decisions were reasonable under the circumstances. *Boyle v. Johnson,* 93 F.3d 180, 188 (5th Cir. 1996). Therefore, Crane has also failed to show that counsel's performance was deficient in declining to produce the mitigating evidence discussed above.

Relatedly, Crane contends that his trial counsel were ineffective for failing to have a confidential mental health expert appointed under *Ake v. Oklahoma*.[5] With a confidential mental health expert, Crane argues, his trial counsel could have further investigated a possible mental impairment without the fear that any harmful opinion the expert reached would be divulged to the State.

_____

[4] Although Crane contends that trial counsel did not investigate his family background, billing records show that trial counsel spent approximately five hours talking with Crane's wife and his mother.

[5] 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

11

Crane's argument fails to take into account his trial counsel's primary reason for declining to pursue this line of defense - a belief that the State would have learned that a psychiatrist had been appointed and that the State would have produced damaging evidence of future dangerousness in rebuttal. However, even assuming that trial counsel erred in failing to seek the appointment of a confidential mental health expert, Crane has not shown how he suffered prejudice from this failure. Crane produced no persuasive psychiatric evidence in the district court that if produced at trial, would have undermined confidence in the resulting verdict. Therefore, this claim is also without merit.

IV.

Crane has also made claims that he was improperly denied a mental health expert to determine his competency at the time of the offense; that the State failed to disclose or turn over exculpatory evidence; that the Texas special issues are unconstitutionally vague; that the trial court erred in excusing for cause prospective juror Rita Solomon; that the trial court erred in excluding certain evidence; that the prosecutor made improper comments on Linda Crane's failure to testify; and that Stephen Cross had a conflict of interest. Based upon our review of the record and the briefs and for reasons stated by the magistrate judge in his report and recommendation of June 24, 1997, and the additional reasons assigned by the district court on August 20, 1997, we agree that the district court correctly denied habeas relief.

Because Crane has failed to make a substantial showing of a denial of a constitutional right, he is not entitled to a CPC.

12

Therefore, we DENY a CPC and VACATE the stay of execution.