**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-20505**

_____

**JEFFERY LYNN WILLIAMS,**

Petitioner - Appellant,

**v.**

**JANIE COCKRELL,**
**Director, Texas Department of Criminal Justice,**
**Institutional Division**

Respondent - Appellee,

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**Houston Division**
(H-00-CV-1178)
January 4, 2002

_____

Before DAVIS, JONES and DeMOSS, Circuit Judges.[1]

PER CURIAM:

Jeffery Lynn Williams, a Texas death row inmate, petitions this court for a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(2) to appeal the district court's order denying habeas corpus relief. For the reasons set forth below, we DENY Williams's application for a COA.

_____

    [1]    Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

## BACKGROUND

During the night of October 26, 1994, nine-year-old Jamie Jackson was violently awakened by an intruder who attempted to strangle her. The intruder then raped Jamie, hit her, threatened to kill her and stole several items from her room. After the intruder left, Jamie got out of bed and found her mother, Barbara Jackson Pullins, lying dead on the living room floor. Pullins was wearing only a pair of panties and her ankles were bound by a phone cord. There were several burn injuries on her body, and she was covered with pieces of burnt paper. An autopsy revealed that Pullins had died of asphyxia due to strangulation.

A day after the murder, the police received a tip that implicated Williams in the crime. The police arranged a photo array, and Jamie identified a photograph of Williams as the intruder who had raped her. After obtaining a search warrant, the police found several items of Pullins's property in the possession of Williams. Williams was arrested. On his way to the police station, Williams informed the arresting officers that he had killed Pullins accidentally.

Williams later gave three videotaped confessions. In the first confession, Williams explained that he and Pullins engaged in consensual sexual intercourse on the night of her death. Williams did not remember exactly how Pullins died, but he asserted at one point that her death was an accident resulting from sex that got "a

2

little too rough." Williams later retracted the first confession, and gave a second videotaped confession in which he disclaimed all responsibility for Pullins's death. Williams claimed that his cousin, Lisa Adams, strangled Pullins while he stole property from Pullins's apartment. In a third videotaped statement, however, Williams admitted that he was lying in his second statement. He stated that he had forced his way into Pullins's apartment with a knife, forced Pullins to disrobe and tied her up with a phone cord. According to Williams, he talked with Pullins a little while, had sex with her, put a plastic bag over her head and then strangled her. He burned her corpse several times to assure that she was dead. Williams also confessed that he strangled and raped Pullins's daughter, Jamie.

Williams was indicted and convicted of capital murder in a state court in Harris County, Texas. The court sentenced Williams to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence in Williams v. State, 937 S.W.2d 479 (Tex. Crim. App. 1996). Williams did not petition the Supreme Court for writ of certiorari.

Williams's subsequent application for a writ of habeas corpus was handled by the same judge who had conducted the capital murder trial. In his habeas petition, Williams alleged that he received ineffective assistance of counsel because his two court-appointed trial counsel failed to present to the jury evidence

3

supporting an "erotic strangulation" theory. The habeas petition also alleged an interrelated issue of ineffective assistance of counsel because of his trial counsels' failure to request a jury instruction for lesser included offenses. The trial court issued extensive findings of fact and conclusions of law recommending that Williams's application be denied on the basis that counsels' decision not to pursue the erotic strangulation theory was a "plausible, reasonable trial decision," which did not constitute ineffective assistance of counsel as defined by Strickland v. Washington, 446 U.S. 668, 104 S.Ct. 2052 (1984). The Texas Court of Criminal Appeals accepted the trial court's findings and recommendations. Ex Parte Williams, No. 43,354-01, slip op. at 2 (Tex. Crim. App. Nov. 2, 1999) (per curiam).

On January 27, 2000, Williams filed his federal petition for writ of habeas corpus in the district court. The district court denied habeas relief with a careful and detailed opinion and refused to grant Williams a COA. Williams now seeks a COA from this court.

**A. DISCUSSION**

Williams's post-1996 federal habeas petition and application for a COA are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 1600 (2000). AEDPA provides that a COA will issue "only if the applicant has made a

4

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court has rejected the habeas petition on its merits, a habeas petitioner makes a "substantial showing of the denial of a constitutional right" by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484, 120 S.Ct. at 1604.

The "determination of whether COA should issue must be made by viewing the petitioner's arguments through the deferential scheme laid out [in AEDPA]." Barrientes v. Johnson, 221 F.3d 741, 772 (5th Cir. 2000) (citing 28 U.S.C. § 2254(d)). AEDPA requires deference to state court adjudication of the issues raised in the habeas petition unless the state adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See § 2254(d); Wheat v. Johnson, 238 F.3d 357, 360 (5th Cir. 2001). Factual issues resolved by the state habeas court are presumed correct, and the petitioner bears the burden of rebutting such a presumption by clear and convincing evidence. See § 2254(e)(1). "The presumption of correctness is especially strong, where, as here, the trial court and the state habeas court

5

are one and the same." Miller-El v. Johnson, 261 F.3d 445, 449 (5th Cir. 2001).

The nature of the penalty in this capital case does not, in itself, require the issuance of a COA. Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000). "However, in capital cases, doubts as to whether a COA should issue must be resolved in favor of the petitioner. Miller-EL, 261 F.3d at 449.

**B.**

Williams raises interrelated ineffective assistance claims in his petition for habeas relief. To prevail on a claim of ineffective assistance of counsel, Williams must prove that: (1) the performance of trial counsel was deficient; and (2) the deficient performance resulted in actual prejudice to Williams. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. "A court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citation omitted).

To establish deficient performance, Williams must demonstrate that "his trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." Crane v. Johnson, 178 F.3d 309, 312 (5th Cir. 1999). The Sixth Amendment right to counsel is violated where "counsel's representation fell below an objective standard of reasonableness."

Strickland, 466 U.S. at 688, 104 S.Ct. at 2064. However, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689, 104 S.Ct. at 2065 (citations omitted).

Williams alleges that his trial counsels' performance was deficient because counsel failed to investigate and present evidence supporting an erotic strangulation theory, which could have resulted in a conviction of a lesser-included offense. "Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise." Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997). The state habeas court determined that counsel made a "plausible, reasonable trial decision" not to present the erotic strangulation theory to the jury. This finding was based the state court's review of post-trial affidavits submitted by Williams's trial counsel and the court's personal knowledge of the evidence presented at trial.[2] "A conscious and

_____

[2] Williams contends that a COA should be granted because the federal district court denied relief without conducting an evidentiary hearing to determine the level of evidentiary support for his erotic strangulation theory. As the above discussion makes plain, there was no need for a hearing. The state

7

informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Kitchens v. Johnson, 190 F.3d 698, 701 (5th Cir. 1999). Williams has failed to demonstrate obvious ineffectiveness resulting from counsels' strategic decision to forego presenting the erotic strangulation theory.

The state court's findings and conclusions necessarily refute Williams's additional contention that his counsel failed to sufficiently investigate evidence pertinent to the erotic strangulation theory. Such evidence only had meaning if counsel had sought to introduce Williams's first confession in which he briefly alluded to consensual, rough sex as the cause of Pullins's death. But the state court found that:

> ". . . trial counsel believed that the applicant's first confession made [him] look like a worse person than he appeared to be in the third confession,"
>
> ". . . trial counsel made the strategic trial decision not to present the applicant's first two videotaped confessions to the jury," and
>
> ". . . trial counsel could not develop any proof that there had been an ongoing sexual relationship between [Williams] and [Pullins], and that counsel could find no proof to support any theory of erotic strangulation or some similar occurrence."

---

court's findings and conclusions eliminate the viability of such a defensive theory, because of its dependence on the admission of the first confession even if the evidence alluded to by Williams existed.

8

These findings demonstrate that counsel had studied the case thoroughly enough to make the reasonable professional evaluation that the erotic strangulation theory would be incredible before the jury. Accepting the dubious assumption that the allegedly un-investigated "evidence" to which Williams refers would have supported the concept of erotic strangulation, that defense would have, in counsel's view, backfired if disbelieved by the jury. It cannot be constitutionally ineffective for counsel to fail to investigate an implausible and potentially damaging "defense." Williams has not shown, with the heightened degree of certainty required by AEDPA, that the state court's findings and conclusions were unreasonable.

Williams also alleges that his counsels' performance was deficient because counsel failed to request a jury instruction on the lesser-included offenses of manslaughter and criminally negligent homicide. This claim, however, is inseparable from Williams's contention that his trial counsel should have presented evidence of Pullins's death resulting from rough sex. Williams concedes in his brief that "failure of his [erotic strangulation] claim necessarily produces the failure of [the jury instruction] claim as well." We agree and so rule.

9

**CONCLUSION**

For the foregoing reasons, Williams has not made a substantial showing that his Sixth Amendment right to counsel was violated. Therefore, we **DENY** his application for a COA.