# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――――

m 01-51199

―――――――――

KIA LEVOY JOHNSON,

Petitioner-Appellant,

VERSUS

JANIE COCKRELL,

DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

―――――――――――――

Appeal from the United States District Court
for the Western District of Texas

―――――――――――――

July 31, 2002

Before JONES, SMITH, and
EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

## I.

In 1995, Kia Johnson was convicted of the capital murder of William Rains and sentenced to death. He now seeks a certificate of appealability ("COA") to challenge the death sentence. We deny a COA.

A security guard at a convenience store discovered the body of William Rains, a clerk, behind the counter. The police were able to obtain a surveillance tape that showed the perpetrator and showed the victim trying to reach for a telephone for forty-five minutes after he was shot.

The next day, Ray Thompson, a long-time acquaintance of Johnson's, called police when he recognized Johnson as the person on the tape when it was shown on television. The police went to Thompson's home and showed him the full videotape, whereupon he again identified Johnson.

A warrant was issued for Johnson's arrest; he soon was located in the custody of police, having been arrested on an unrelated charge. A police officer identified Johnson as the man in the tape because he was wearing the same distinctive clothing. Henry Wright, another of Johnson's acquiantances, also identified him as the man portrayed in the tape.

## II.

During the penalty phase of the trial, Johnson's attorney called the victim's father, Julian Rains, as a witness. Rains testified to the admirable qualities of his deceased son and stated that "I want the guilty person punished, whether it be Mr. Johnson or whomever it may be because I don't think my son could rest until his murderer is taken care of."

Johnson's conviction was upheld by the Texas Court of Criminal Appeals in 1996. In 1997 and 1998, the Court of Criminal Appeals rejected two habeas corpus petitions. In November 2001, Johnson's habeas corpus petition and request for COA were rejected in federal district court.

Johnson's petition to the district court cited a variety of grounds. He now appeals on only one of these: The claim that his attorney's calling of the victim's father as a witness at the punishment phase of the trial, and the substance of his questioning of that witness, constituted ineffective assistance of counsel.

## III.

The state argues that Johnson's ineffective assistance claim is barred because he failed to raise it in the district court. To the contrary, the record and district court opinion show unequivocally that the claim was in fact raised and considered. *See Johnson v. Cockrell*, No. SA-98-CA-133-EP, at 43-48 (W.D. Tex. Nov.

15, 2001) (considering and rejecting the ineffective assistance claim now under appeal).[1] We must therefore consider Johnson's claim on the merits.

## IV.
### A.

To obtain a COA, Johnson must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c) (1994). On appeal, such a showing requires proof that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Because Johnson's ineffective assistance claim was previously considered and rejected by a state court, it is also governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which a state court decision will be overturned in a habeas proceeding only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (1994).[2]

---

[1] The state further contends that Johnson did not argue to the district court that Julian Rains's testimony constitutes grounds for an ineffective assistance claim because it allegedly encouraged the jury to impose a sentence of death. Johnson, however, did in fact make this argument in one of his briefs to the district court.

[2] Johnson's case is governed by AEDPA because his habeas petition was filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 324-26 (1997) (describing time-frame for application of AEDPA).

### B.

To sustain a claim of inadequate assistance of counsel, a defendant usually must meet the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires proof that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense" so gravely as to "deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658 (1984). In such cases, where the defendant is constructively denied assistance of counsel, prejudice is automatically assumed and need not be proven. *Id.* at 658-62.

Johnson argues that his counsel's examination of Julian Rains was so egregious an error that it falls within the narrow *Cronic* exception to the usual requirements imposed on ineffective assistance claims. This contention is without merit.

"'A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was *in effect denied any meaningful assistance at all*.'" *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998) (quoting *Childress v. Johnson*, 103 F.3d 1221, 1229 (5th Cir. 1997)) (emphasis added).[3] The Supreme Court recently has emphasized that for *Cronic* to apply, "the attorney's failure must be *complete*." *Bell v. Cone*, 122 S. Ct. 1843, 1851 (2002). "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the trial. *Id.* It is not enough for the defendant to show mere "shoddy representation" or to prove the existence of "errors, omissions, or strategic blunders" by counsel. *Jackson*, 150 F.3d at 525. "[B]ad lawyering, regardless of how bad, does not support the per se presumption of prejudice." *Id.* (citations omitted).[4]

Johnson's attorney undeniably rendered "meaningful assistance" to his client throughout the guilt and penalty phases. *Id.* Counsel's examination of Julian Rains apparently was part of a strategy intended to elicit some statement indicating that the defendant should be spared the death penalty. This is indicated, for example, by the fact that Johnson's attorney asked Rains whether he was "a religious man," which implies that counsel may have been seeking to elicit a plea that Johnson be spared for religious reasons. Counsel cited Rains's testimony in his closing argument asking that Johnson be spared the death penalty. Although this strategy may have been mistaken, it at most constitutes a

---

[3] *Cf. Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (en banc) (upholding a *Cronic* claim in a case where the defendant's lawyer was asleep during parts of the trial because "[u]nconscious counsel *equates to no counsel at all*. Unconscious counsel does not analyze, object, listen (continued...)

[3](...continued) or in any way exercise judgment on behalf of the client"), *cert. denied*, 122 S. Ct. 2347 (2002). Johnson's counsel "exercise[d] judgment" on behalf of his client throughout, and he was certainly far superior to having "no counsel at all." *Id.*

[4] *See also Gochicoa v. Johnson*, 238 F.3d 278, 284-85 (5th Cir. 2001) (same).

"strategic blunder" or "bad lawyering" of precisely the sort that under our precedents is insufficient to support a *Cronic* claim. *Id.* Likewise, counsel's performance fell far short of the "complete" failure required by the Supreme Court. *Bell*, 122 S. Ct. at 1851.

### C.

Johnson's ineffective assistance claim must therefore be analyzed under the standards of *Washington*, in which the Court stressed that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight." *Washington*, 466 U.S. at 689. Thus, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In applying *Washington*, "we will not find ineffective assistance of counsel merely because we disagree with counsel's trial strategy." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).

Even if counsel is proven deficient, a *Washington* claim cannot be sustained without strong proof of prejudice. To prove such prejudice, Johnson must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312 (citing *Washington*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.*[5] "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v.*

---

[5] *See also Washington*, 466 U.S. at 693 (noting that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding").

*Fretwell*, 506 U.S. 364, 369 (1993)).

We agree with the district court that in light of the overwhelming evidence against Johnson and his extensive prior criminal record, of which the jury was made aware,[6] there was no prejudice, even if we assume, *arguendo*, that counsel was ineffective. Given the seriousness of his crime and his record, it is highly likely that Johnson would have been sentenced to death even in the absence of Rains's testimony.

Although Johnson describes Rains's testimony as a "request for the death penalty," in fact Rains asked only that his son's killer be "taken care of," which suggests that he might have been satisfied with the lesser punishment of life imprisonment. At the very least, this highly equivocal statement and the rest of Rains's testimony certainly fell far short of prejudicing the defendant's case to such an extent that it "rendered sentencing fundamentally unfair or unreliable." *Id.* (citations omitted).

### D.

Because we follow the district court in holding that there was no prejudice, we need not decide whether Johnson's attorney performed so poorly as to overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Washington*, 466 U.S. at 689. It seems probable, however, that "under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

Given the egregious nature of Johnson's offense and his criminal history, defense counsel legitimately might have concluded that Rains's

---

[6] Johnson had multiple felony convictions, including for aggravated robbery and burglary.

4

testimony was unlikely to increase significantly his client's already high chance of receiving the death penalty. The possibility of eliciting a statement from the victim's father opposing imposition of the death penalty therefore might have justified the attendant risks of calling Rains to the stand. In retrospect, this strategy seems to have failed; but in a *Washington* analysis, "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689.

### E.

Johnson contends that the district court erred by allegedly failing to take account of the trial evidence in its evaluation of his claim of ineffective assistance. Johnson asserts that the evidence against him was sufficiently weak that, absent counsel's ineffective performance in the penalty phase, the jury's "residual doubt" regarding guilt or innocence would have led it to forego the death penalty. *Moore v. Johnson*, 194 F.3d 586, 619 (5th Cir. 1999). According to Johnson, the court erred in supposedly failing to consider both the guilt and punishment phases of the trial in determining "whether there is a reasonable probability that, but for counsel's deficient performance, the jury might have answered the special issues put before it differently." *Id.*

"Residual doubt" left over from the guilt phase of a capital murder trial can have a substantial impact on whether that same jury imposes a death sentence during the punishment phase. *Lockhart v. McCree*, 476 U.S. 162, 181 (1986). The district court did indeed consider the full record, however. *See Johnson v. Cockrell*, No. SA-98-CA-133-EP, at 46-47 (W.D. Tex. Nov. 15, 2001) (holding that "[h]aving reviewed the *entire trial record* carefully, this Court concludes that there is no reasonable probability that but for the petitioner's trial counsel calling the victim's father to the stand . . . the jury would have rendered a different verdict on either of the special issues before it") (emphasis added).

In view of the overwhelming nature of the evidence against Johnson——who was videotaped in the act of committing the crime and then was identified by three witnesses as the man in the videotape——there is no reasonable chance that the jury retained enough "residual doubt" concerning guilt that it might have decided to forego the death penalty but for defense counsel's alleged errors in his questioning of Rains. Certainly, there is no reason to believe that any potential prejudice in this regard was serious enough to "render . . . sentencing fundamentally unfair or unreliable." *Crane*, 178 F.3d at 312.

The application for COA is DENIED.