# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2010

No. 09-50328

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MACE MCGREW, also known as Mace Lee McGrew,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:07-CV-259

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Mace McGrew was convicted under 18 U.S.C. § 922(g)(1) of being a felon in possession of a firearm. He timely appealed and his conviction was affirmed. The district court denied McGrew's 28 U.S.C. § 2255 motion for post-conviction relief and this court granted McGrew a certificate of appealability. For the following reasons, the district court's judgment is AFFIRMED as to McGrew's ineffective assistance of appellate counsel claim and REVERSED as to McGrew's Fifth Amendment and ineffective assistance of trial counsel claims. This case is

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-50328

REMANDED for an evidentiary hearing on McGrew's Fifth Amendment and ineffective assistance of trial counsel claims.

## FACTS AND PROCEEDINGS

A jury convicted McGrew of being a felon in possession of a firearm, and the district court sentenced him to a fifty-one-month prison term to be followed by three years of supervised release. His codefendant, William Tutt, was acquitted of the same charge. Because the rifle was found in a bedroom of a house that McGrew often shared with his girlfriend, Renee Chapman, the key issue at McGrew's trial was whether he constructively possessed the rifle, specifically whether he knew that the rifle was in the bedroom and whether he had access to it. *United States v. McGrew*, 165 F. App'x 308, 311 (5th Cir. 2006); *see also United States v. Hinojosa*, 349 F.3d 200, 203-04 (5th Cir. 2003).[1] McGrew's defense was that he had allowed his friend, Tutt, who did not live at the house, to store some items in Chapman's bedroom, but that McGrew did not know that one of the items was a rifle. Tutt testified at trial that he told McGrew that he had a rifle that he wanted to get rid of and that McGrew said that he would take the rifle. Tutt testified that McGrew told him to put the rifle under Chapman's bed because McGrew did not want Chapman to know it was in the house.

Witnesses at trial testified regarding the search for and the discovery of the rifle. Chapman stated that she consented to a search of her home by two

---

[1] "Ordinarily, constructive possession may be found if the defendant had (1) ownership, dominion or control over the item itself or (2) dominion or control over the premises in which the item is found." *McGrew*, 165 F. App'x at 311 (citing *United States v. De Leon*, 170 F.3d 494, 496 (5th Cir. 1999); *Hinojosa*, 349 F.3d at 203). Where two or more persons jointly occupy the premises where a firearm is found, mere control or dominion over the premises is insufficient to establish constructive possession; the evidence must support at least a "plausible inference that the defendant had knowledge of and access to the weapon or contraband." *McGrew*, 165 F. App'x at 311 (quoting *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993)).

police officers and two probation officers. Chapman testified that she lived at the house and that McGrew stayed there several nights a week. During the search, while McGrew tended to the couple's child in the living room, a police officer was stationed at the door to ensure that no one entered or left the house. Probation officers found a rifle, body armor, and a lock box under the bed where Chapman and McGrew slept. They also recovered marijuana and some ammunition from the bedroom. McGrew admitted that the marijuana was his and volunteered to call Tutt, who McGrew said had a key to the lockbox. Tutt came to the house with a key and opened the box, which contained money, a cell phone, and ammunition. One of the police officers questioned McGrew about the ownership of the rifle. McGrew denied that the rifle belonged to him. The officer testified, however, that McGrew admitted that he knew the rifle was under the bed. McGrew was arrested for possessing the rifle and the marijuana. There was no testimony at the trial indicating that McGrew received warnings as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), at any time.

In his § 2255 motion for post-conviction relief, McGrew asserted numerous claims including: (1) that he was unlawfully arrested; (2) that he was convicted based on incriminating statements he made during a custodial interrogation without receiving *Miranda* warnings; (3) that he received ineffective assistance of trial counsel when his lawyer failed to file a motion to suppress these statements; and (4) that his appellate counsel was ineffective for failing to argue the *Miranda* violation on appeal.

The district court denied McGrew's § 2255 motion without an evidentiary hearing. It held that McGrew did not undergo a custodial interrogation and that trial counsel was not ineffective for failing to file a motion to suppress McGrew's statements. The district court reasoned that McGrew had failed to show that his counsel's decision not to file a motion to suppress was not a sound trial strategy and that he suffered prejudice from that decision. The trial court also denied

No. 09-50328

McGrew's claim that appellate counsel was ineffective. The court dismissed McGrew's unlawful arrest claim, reasoning that it had been procedurally defaulted and that *Stone v. Powell*, 428 U.S. 465 (1976), barred the court from reviewing McGrew's Fourth Amendment claims.

## STANDARD OF REVIEW AND APPLICABLE LAW

In the context of a motion for relief pursuant to 28 U.S.C. § 2255, the court of appeals reviews a district court's factual findings for clear error and its legal conclusions de novo. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008) (citing *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006)). The review of a district court's refusal to grant an evidentiary hearing on a § 2255 motion is for abuse of discretion; the district court should conduct an evidentiary hearing only if the appellant produced "independent indicia of the likely merit of [his] allegations." *Edwards*, 442 F.3d at 264 (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)); *see also United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) (holding that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing). Once such independent evidence is presented, "'[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" *Cavitt*, 550 F.3d at 442 (quoting *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)) (alteration in original).

## DISCUSSION

This court granted McGrew a certificate of appealability ("COA") as to the following issues: (1) whether the district court erred in determining that *Stone* bars McGrew's claim that he was convicted based on incriminating statements he made during a custodial interrogation without receiving *Miranda* warnings in violation of his Fifth Amendment right against self-incrimination; (2) whether McGrew procedurally defaulted his *Miranda* claim; (3) if McGrew's *Miranda*

4

claim is not procedurally defaulted, whether he established a Fifth Amendment violation; (4) whether trial and appellate counsel were ineffective for failing to raise the alleged Fifth Amendment violation; and (5) whether the district court should have granted McGrew an evidentiary hearing on the *Miranda* claim. Each issue is addressed in turn.

A. *Stone v. Powell*

In *Stone*, the Supreme Court held that a state prisoner cannot raise a Fourth Amendment challenge in a collateral attack if the prisoner had a full and fair opportunity to litigate that issue in the state courts. 458 U.S. at 494-95 & n.37; *see also United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003) (extending the *Stone* rule to federal prisoners bringing § 2255 claims). The Supreme Court has refused to apply *Stone* to bar collateral attacks based on *Miranda* violations. *Withrow v. Williams*, 507 U.S. 680, 688 (1993).

In his § 2255 motion, McGrew grouped two claims—his *Miranda* claim and his claim that he was illegally arrested—under the heading of "unlawful arrest." In denying relief for "unlawful arrest," the district court explained that "because defendants in federal court have an opportunity to litigate *Fourth Amendment* claims, collateral review of those claims is . . . barred by *Stone v. Powell*." (emphasis added). The district court, therefore, did not hold that *Stone* barred McGrew's Fifth Amendment claim.

B. Procedural Default

The government's brief before the district court did not address McGrew's claim that the statements he made without receiving *Miranda* warnings were erroneously introduced at trial, much less argue that this claim was procedurally defaulted. Instead, the district court *sua sponte* held that McGrew's *Miranda* claim was procedurally defaulted. Although a district court may raise the issue of procedural default *sua sponte*, it must afford the movant notice and an opportunity to respond. *Fisher v. State of Texas*, 169 F.3d 295, 301-02 (5th Cir.

1999). The district court failed to give such notice and failed to provide the opportunity to respond.

In appropriate circumstances, this court may apply the procedural bar *sua sponte*. *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000); *see also United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001). The relevant concerns are whether the petitioner has been given notice and an opportunity to respond and whether the government has waived the defense intentionally. *Smith*, 216 F.3d at 524; *Willis*, 273 F.3d at 596. This court's grant of a COA on the procedural bar issue provided McGrew with notice and an opportunity to respond. The record does not reflect that the government intentionally waived the procedural default defense because it did not even address McGrew's *Miranda* claim in its briefing before the district court. *See Willis*, 273 F.3d at 596-97. Accordingly, this court will consider whether McGrew defaulted his *Miranda* claim.

A § 2255 motion is not a substitute for a direct appeal. A prisoner may not raise a claim for the first time in a collateral attack unless he shows cause for his procedural default and actual prejudice resulting from the error. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc); *see also United States v. Frady*, 456 U.S. 152, 167 (1982). Although McGrew does not directly address why his procedural default should be excused, he does argue that his trial and appellate counsel were ineffective for failing to raise the *Miranda* issue. A petitioner can establish cause and prejudice by showing that counsel rendered constitutionally-ineffective assistance. *See United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1994). Because the analysis of whether McGrew's counsel was ineffective for failing to raise his Fifth Amendment claim is intertwined with the merits of that claim, McGrew's Fifth Amendment claim is addressed first.

C. *Alleged Fifth Amendment Violation*

No. 09-50328

McGrew argues that his counsel rendered ineffective assistance by failing to raise his *Miranda* claim at trial. He maintains that the claim would have been successful and that counsel's failure to raise it was prejudicial. Incriminating statements made during a custodial interrogation by a suspect who has not first received *Miranda* warnings are generally inadmissible. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).  A suspect is "in custody" when he is placed under arrest or when a reasonable person in the position of the suspect would understand that the restriction on his freedom of movement is tantamount to a formal arrest. *United States v. Stevens*, 487 F.3d 232, 241 (5th Cir. 2007). This court has considered a number of factors in determining whether a suspect is "in custody," including how long the questioning lasts, at what point the incriminating information is provided, the location of the questioning, whether the questioning takes place in public, and the number of questioners. *See United States v. Harrell*, 894 F.2d 120, 124 (5th Cir. 1990). An "interrogation" occurs where "a person in custody is subjected to either express questioning or its functional equivalent," i.e., words or actions "that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). Voluntary statements made by a suspect are admissible, regardless of whether the suspect has been advised of his *Miranda* rights. *See id.* at 299-300.

McGrew states in his sworn declaration that he was subjected to custodial interrogation when, over the course of an hour and without receiving *Miranda* warnings, he was questioned about the rifle.  He further explains that an officer stationed at the door would not let him leave, that he was not free to leave because the officers decided to arrest him when they found the rifle, and that at some point during the interrogation he was handcuffed.

If the district court were to find the allegations in McGrew's declaration credible, McGrew may be able to demonstrate that he was in custody at the time

7

the incriminating statements were made. Evidence presented at trial corroborates some of McGrew's allegations. For example, a police officer testified that he was stationed at the door during the search to prevent anyone from leaving. It is not clear on this record whether, at the time of the search, a reasonable person in McGrew's position would have understood that the officers would not have allowed him to leave. McGrew alleges in his sworn declaration that he was "ordered to sit down and remain seated" and that he was placed in handcuffs while he was being questioned, although he does not specify on appeal whether he made any incriminating statements while handcuffed. Even if McGrew was not in custody at the beginning of the search, it is arguable that a reasonable person in McGrew's position would not believe that he was free to leave once he admitted to possessing the marijuana. *See United States v. Bengivenga*, 845 F.2d 593, 597 & n.16 (5th Cir. 1988) (en banc). McGrew's allegation that he was questioned for "at least a[n] hour" "raises considerable suspicion" that a custodial interrogation has occurred, although it does not conclusively establish that he was in custody. *See Harrell*, 894 F.2d at 124 & n.1. McGrew does not state when he admitted that he knew that the gun was under the bed.

Certainly, several factors also support the inference that McGrew may not have been "in custody." McGrew was questioned in his girlfriend's home, where he lived at least some of the time. *See id.* at 125 ("A reasonable person, questioned within his own home, would not suffer 'a restraint on freedom of movement of the degree which the law associates with formal arrest.'"). The presence of only two police officers and two probation officers also suggests that the questioning was not police dominated. *See Bengivenga*, 845 F.2d at 598.

McGrew's sworn declaration and the record also suggest that he might be able to establish that he underwent interrogation. The trial record shows that a police officer asked him whether he owned the rifle, why it was in the room,

8

and why it was under the bed—statements that the police may have known were likely to elicit an incriminating answer. In fact, a police officer testified at trial that, as soon as the rifle was found, he suspected McGrew of possessing it.

It is possible that McGrew's sworn statements, if credited and considered along with the evidence presented at trial, could establish that McGrew was subject to a custodial interrogation. McGrew has produced "independent indicia of the likely merit of [his] allegations," *see Edwards*, 442 F.3d at 264, and "the motion, files, and records of the case [do not] conclusively show that [he] is entitled to no relief,'" *Cavitt*, 550 F.3d at 442 (citation omitted). Before determining whether the district court abused its discretion in denying McGrew an evidentiary hearing with respect to his Fifth Amendment claim, this court must consider the district court's holding that his counsel did not render ineffective assistance.

D. *Alleged Ineffective Assistance of Counsel*

A federal habeas petitioner who alleges ineffective assistance of counsel must show that his counsel's performance was deficient and that this deficient performance resulted in actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Michael v. Louisiana*, 350 U.S. 91, 101 (1985)) (internal quotation marks omitted).  If a tactical decision

is "'conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Cavitt*, 550 F.3d at 440 (quoting *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999)) (alteration in original).

i. *Deficient Performance*

McGrew argues that counsel was deficient in failing to file a motion to suppress statements illegally obtained during an alleged custodial interrogation. The district court held that McGrew's trial counsel's failure to file a motion to suppress was sound trial strategy because McGrew made statements that were helpful to his defense during McGrew's conversation with the officers. Namely, McGrew stated that, although Tutt brought over some items to the house, he did not know what the items were. McGrew also volunteered that he possessed the marijuana; his counsel argued at trial that this demonstrated that his other statements to the police were also true. However, those statements are mildly helpful at best[2] and do not outweigh McGrew's incriminating statement that he knew the rifle was under the bed. *See McGrew*, 165 F. App'x at 312-13. There is no sworn testimony by McGrew's counsel explaining the strategy behind the decision not to file a motion to suppress. Given the devastating impact of that statement, it is impossible to conclude without further factual development that McGrew's trial counsel's decision not to file a motion to suppress was "strategic, conscious, and informed." *See Strickland*, 466 U.S. at 689.

ii. *Prejudice*

It is also possible that McGrew suffered prejudice under *Strickland* due to trial counsel's failure to file a motion to suppress McGrew's statement to the police that he knew that the rifle was under the bed. McGrew's admission was

---

[2] Assuming that McGrew's statement that the marijuana was his supports the veracity of his other statements to the police, by the same logic, it would also support the government's contention that McGrew was telling the truth when he said that he knew the rifle was under the bed.

certainly probative evidence of his guilt. *See McGrew*, 165 F. App'x at 311-12; *see also United States v. Avants*, 278 F.3d 510, 522 (5th Cir. 2002) (explaining that the defendant's confession was "powerful evidence of guilt, the admission or exclusion of which would be highly likely to affect the outcome of the trial"); *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998) (explaining that a defendant's confession is "probably the most probative and damaging evidence" against him). Although the government introduced other evidence at trial supporting the inference that McGrew had knowledge of the rifle, no evidence was as damaging as McGrew's admission. Tutt testified that he told McGrew that he wanted to get rid of a firearm and that McGrew expressed interest in the firearm. Tutt also testified that when he came to Chapman's house, McGrew was in the bedroom. Tutt testified that he showed McGrew the rifle and that McGrew instructed Tutt to put the rifle underneath the bed so that Chapman would not know that it was in the house. However, Tutt's trial testimony was somewhat contradictory because he also acknowledged that McGrew told him that he could store certain items at Chapman's house, so long as the items were not illegal. Tutt presumably knew that it was illegal for McGrew to possess a firearm: Tutt testified that Tutt was a convicted felon, that Tutt knew that it was illegal for him to possess a firearm, and that he knew that McGrew was also a convicted felon. The jury may have viewed Tutt's testimony, as McGrew's co-defendant and a convicted felon, to be not credible. Additionally, the police told Tutt that McGrew was the primary target of the prosecution, which could lead a rational juror to question whether Tutt's testimony was calculated to direct the blame to McGrew. Assuming that a motion to suppress would have been successful, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Rosalez-Orozco*, 8 F.3d 198, 199 (5th Cir. 1993) (internal quotation marks

11

omitted).[3]    Because "the motion, files, and records of the case [do not] conclusively show that the prisoner is entitled to no relief," *Cavitt*, 550 F.3d at 442, the district court abused its discretion in denying McGrew an evidentiary hearing with respect to his Fifth Amendment claim and his claim that his trial counsel was ineffective for failing to file a motion based on his Fifth Amendment claim. The district court's denial of McGrew's Fifth Amendment claim and his ineffective assistance of trial counsel claim is reversed and remanded for an evidentiary hearing.

However, McGrew has not shown that his appellate counsel was ineffective. Appellate counsel could not have established that, on the record before the district court, the decision to admit the testimony was plainly erroneous. Assuming that this court would have applied a plain-error standard on direct appeal because McGrew did not raise the issue at trial, *United States v. Baker*, 538 F.3d 324, 328-29 & n.1 (5th Cir. 2008), an appeal would have not been successful and the judgment of the district court as to this claim is affirmed.

## CONCLUSION

For the foregoing reasons, the district court's judgment on McGrew's ineffective assistance of appellate counsel claim is AFFIRMED. The district

---

[3] McGrew argues that his statement to the police officer that he lived with Chapman at the house was obtained in violation of *Miranda*. Although McGrew presented this argument in his briefing before the district court, the court's opinion did not address it. However, McGrew is not entitled to relief on this claim because McGrew cannot show prejudice. The overwhelming evidence introduced at trial supports that McGrew had domination or control over the premises. *See McGrew*, 165 F. App'x at 311-12. Chapman testified at trial that McGrew stayed at the residence at least a few nights per week, and testimony by a probation officer revealed that McGrew had been staying there more often at the time of the search. *Id.* at 312. The presence of McGrew's marijuana and clothing in the closet supports the conclusion that he was more than a casual visitor. *Id.* "Moreover, the fact that McGrew allowed another person [Tutt] to keep items at the house without Chapman's knowledge or permission indiciates that he indeed had control over the residence." *Id.*

No. 09-50328

court's judgment on McGrew's Fifth Amendment and ineffective assistance of trial counsel claims is REVERSED and this case is REMANDED to the district court for an evidentiary hearing on these claims.